No. 11,053.

Massantonio v. The People.

Decided June 1, 1925.

Plaintiff in error was convicted of a violation of the prohibition act.

*Affirmed.*

1. Constitutional Law—*Federal Constitution—Amendments.* The first ten amendments to the United States Constitution are limitations on federal power, and not applicable to the states.

2.  CRIMINAL LAW—*Evidence Unlawfully Obtained—Admissibility.* Although papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue.

3.  SEARCH AND SEIZURE—*Illegal.* Every officer making an unconstitutional search, and every officer advising or conniving at such conduct, is a law violator.

*Error to the District Court of Fremont County, Hon. James L. Cooper, Judge.*

Mr. JAMES T. LOCKE, Mr. AUGUSTUS PEASE, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. RILEY R. CLOUD, Assistant, Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. JEAN S. BREITENSTEIN, Assistant, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was fined $300 and sentenced to jail for sixty days on a verdict of guilty of unlawfully possessing intoxicating liquor.  To review that judgment he brings error.

Defendant contends that the only evidence supporting the verdict was obtained by an unlawful search of his residence, made by the sheriff without warrant, and that prior to and during the trial defendant took all proper steps to recover, suppress and strike out said evidence. Assuming, without deciding, the correctness of these contentions we address ourselves to the admissibility of such evidence.

Section 7, article II, of the Colorado Constitution reads: "That the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seiz-

ures; and no warrant to search any place or seize any person or thing shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing."

The 4th amendment to the Federal Constitution reads: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 18 of article II of the Colorado Constitution reads in part: "That no person shall be compelled to testify against himself in a criminal case * * *."

Amendment 5 of the Federal Constitution reads in part: "Nor shall any person * * * be compelled in any criminal case, to be a witness against himself; * * *."

So far as the question now under consideration is concerned these federal and state provisions are identical, and the same may be said in general of said federal provisions and the constitutional provisions of other states where this question has been considered. These state authorities are in hopeless conflict. About twelve of them are unequivocally committed to the rule admitting such evidence, and approximately an equal number to the rule excluding it. Others have shifted their positions from one side to the other. A number of these cases are notable for the strength and logic of dissenting opinions and in some there is room for the argument that the rule has been stated obiter. There has been some uncertainty and divergence in the decisions of the United States District and Circuit courts, and for that reason, and the further reason that said courts are governed by the decisions of the United States Supreme Court, we do not now notice these cases. The United States Supreme Court holds firmly to the rule that when timely motion is made for the return of the seized evidence it cannot, over objection, be used by the

prosecution. *Boyd v. U. S.*, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524; *Weeks v. U. S.*, 232 U. S. 383, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341; *Gouled v. U. S.*, 255 U. S. 298, 65 L. Ed. 647, 41 Sup. Ct. Rep. 261; *Amos v. U. S.*, 255 U. S. 313, 65 L. Ed. 654, 41 Sup. Ct. Rep. 266.

The first ten amendments to the United States Constitution are limitations on the federal power, and not applicable to the states. 12 C. J. p. 744 sec. 163. The United States cases are therefore persuasive, but not controlling.

Among the more important of the state cases supporting the rule that the evidence in question is inadmissible are: *Youman v. Commonwealth*, 189 Ky. 152, 224 S. W. 860; 13 A. L. R. 1303; *People v. Castree*, 311 Ill. 392, 143 N. E. 112, 32 A. L. R. 357; *State v. Owens*, 302 Mo. 348, 259 S. W. 100, 32 A. L. R. 383.

Among the state courts holding the contrary may be noted: *People v. Mayen*, 188 Cal. 237, 205 Pac. 435, 24 A. L. R. 1383; *State v. Aime*, 62 Utah 476, 220 Pac. 704, 32 A. L. R. 375; *State v. Tonn*, 195 Ia. 94, 191 N. W. 530.

Apparently but two cases in our own court have approached the subject: *Pasch v. People*, 72 Colo. 92, 209 Pac. 639, in which no constitutional question was discussed; and *Imboden v. People*, 40 Colo. 142, 90 Pac. 608, in which the seizure was by individuals, and there was no motion to suppress the evidence. The precise point is therefore apparently before us for the first time.

So thoroughly has this question been examined by courts and text writers, so exhaustive their reasoning, and so forceful their statements of conclusions, that a re-examination here could shed no additional light on the subject, and an attempted restatement result only in an experiment of doubtful value. Suffice it to say we have examined all these authorities with diligence and considered them with care, and have endeavored to follow that rule which, in our judgment, leaves the law a sword to the state and a shield to the citizen without converting it into a bomb proof dugout for their enemies. It remains therefore only

to state, and briefly quote from, the authorities whose reasoning and conclusion we adopt.

The general principle is thus stated by Greenleaf: "Though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question." Greenleaf on Evidence (15th Ed.) Vol. 1, p. 348, § 254.

Professor Wigmore, in his great work on Evidence, traces the history of this question in the United States Supreme Court from the far-reaching and alleged erroneous decision in *Boyd v. U. S., supra,* in 1885, to *Adams v. N. Y.,* 192 U. S. 585, 24 Sup. Ct. Rep. 372, 48 L. Ed. 575, reversing that court's position in 1904; thence to *Weeks v. U. S., supra,* returning to the rule of the Boyd Case of thirty years earlier, but with the qualification that the legality of the seizure must first be determined under a motion to return. He notes the influence of the Boyd Case on the state courts which followed the rule there established, and points out the fallacy of the assumption that an investigation of collateral issues was avoided by a motion to return the evidence and a preliminary hearing thereon.

"Since the enactment of the Eighteenth Amendment and its auxiliary legislation, a new and popular occasion has been afforded for the misplaced invocation of this principle; and the judicial excesses of many courts in sanctioning its use give an impression of maudlin complaisance which would be ludicrous if it were not so dangerous to the general respect for law and order in the community. * * *

Looking still deeper, the mainstay of the special doctrine of *Weeks v. United States* is that the party whose documents were obtained by illegal search has a right to obtain their return by motion before trial. But no such conse-

quence is implied in the Fourth Amendment. The object of the Amendment was to protect the citizen from domestic disturbance by the disorderly intrusion of irresponsible administrative officials. * * * But it implies nothing at all as to the nature of the documents or chattels possessed by the citizen; and they may be treasonable, criminal, wicked, harmless, or meritorious, so far as the Amendment's tenor is concerned. And when the citizen sets up a right to a remedial process for their return, certainly the merits of the articles themselves must come into issue. If the officials, illegally searching, came across an infernal machine, planned for the city's destruction, and impounded it, shall we say that the diabolical owner of it may appear in court, brazenly demand process for its return, and be supinely accorded by the Court a writ of restitution, with perhaps an apology for the 'outrage'? Such is the logical consequence of the doctrine of *Weeks v. U. S.*, unless the right to return be dependent on the merits of the document or chattel as being instruments of crime or not. Yet no such issue is permitted by the doctrine of *Weeks v. United States.* The truth is that the doctrine in question is illogical, and that the citizen has no right to claim a return of the articles taken unless their criminal or innocent nature be first determined; but as that is part of the very issue in the main charge, it cannot be determined in advance; so that the doctrine leads to impracticable results.

But the essential fallacy of *Weeks v. United States* and its successors is that it virtually creates a novel exception, where the Fourth Amendment is involved, to the fundamental principle that an illegality in the mode of procuring evidence is no ground for excluding it. The doctrine of such an exception rests on a reverence for the Fourth Amendment so deep and cogent that its violation will be taken notice of, at any cost of other justice, and even in the most indirect way." Wigmore on Evidence (2nd Ed.) Vol. 4 p. 635 § 2184.

We have read, not only the judicial criticisms of this

doctrine as found in the official reports, but also that of Mr. Connor Hall in the October, 1923, issue of the American Bar Association Journal, and yet we are unconvinced. These criticisms, in the last analysis, rest neither upon the fear that adequate protection will not be afforded the law-abiding citizen and adequate damages in case of violation, nor yet upon the fear that like protection and damages will not be afforded the criminal. Each is entitled to such protection and compensation when his rights have been invaded. They rest in fact upon the fear that the damages awarded the criminal are likely to be insignificant as compared with those awarded the law-abiding man. This is doubtless true and ought to be true. He who has voluntarily made his home a den of thieves, a distillery for the manufacture of contraband liquor, a warehouse for infernal machines, or a safety deposit box for forged documents or counterfeit coins, has not sustained the same damages when its sanctity is invaded as has the citizen who has maintained that sanctity.

"Without at all minimizing the gravity of such offense, or the sacredness of the right of every citizen to be secure in his person, home, and property from any unlawful invasion by the state, it does not follow that the subsequent detention and introduction in evidence of the property thus wrongfully taken constituted error on the trial of the appellant.

The trespass committed in the wrongful seizure of these personal effects by unauthorized officers, and the subsequent use of the same in evidence on the part of the prosecution, were in legal effect entirely distinct transactions with no necessary or inherent relation to each other.

There was nothing in the character of the articles taken, or in the fact that they belonged to the defendant, which affected their competency as evidence.

It is conceded that they were relevant and material to the case for the prosecution, and appellant's counsel themselves claim that these personal effects were of such sig-

nificance in the case as to determine the verdict against their client. * * *

The fallacy of the doctrine contended for by appellant is in assuming that the constitutional rights of the defendant are violated by using his private papers as evidence against him, whereas it was the invasion of his premises and the taking of his goods that constituted the offense irrespective of what was taken or of what use was made of it; and the law having declared that the articles taken are competent and admissible evidence, notwithstanding the unlawful search and seizure, how can the circumstance that the court erred in an independent proceeding for the return of the property on defendant's demand add anything to or detract from the violation of defendant's constitutional rights in the unlawful search and seizure. * * *

We concur with the authorities cited that even the technical rights of citizens to be protected from unlawful searches and seizures should be zealously safeguarded and the infringements thereof adequately punished; but we are not prepared to impose upon the courts of this state the duty and burden of injecting into a criminal prosecution the collateral investigation of every objection that may be raised as to the source from which and the manner in which evidence in the hands of the public prosecutors has been obtained. The parties aggrieved should be left to independent action to protect their constitutional rights, and obtain redress for their infringement, and if in such a proceeding error is committed, it should be determined in some appropriate method of review upon its own record, and not collaterally on appeal from a judgment of conviction in a criminal case in which the seized property was used as evidence." *People v. Mayen, supra.*

In our opinion the evidence here in question was admissible, irrespective of how it was procured, and defendant was not entitled to trial and judgment on the legality of its seizure by a motion for its return filed in the main case. This conclusion obviates the necessity for the consideration

of any other question herein. The judgment must be affirmed.

We cannot leave this subject, however, without noticing the following paragraph of the brief of the Attorney General: "We feel that the decision on this point is of great importance as it directly affects the powers of the law enforcing officers, and if the contention of our opponents is upheld the hands of these officers will be tied and one more technicality will be thrown up to delay and prevent the apprehension and conviction of criminals. It might be well to observe what would be the effect of such a rule. Evidence secretly and surreptitiously obtained would be inadmissible. Thieves could rest secure in their homes, knowing that it would be next to impossible to be taken by surprise, and the bootlegger would have little fear of a sudden onslaught by the prohibition officers. * * * To hold that the peace officers must advertise both their identity and purpose to the world whenever they attempt to secure evidence is, in our opinion, to put a wholly unreasonable and illegal restriction on their powers."

Apparently this frankly and lucidly states the position of those who, under the guise of official authority, without a warrant of search and in defiance of the Constitution of their state, invade without hesitation the homes of its citizens and seize whatever they find which they think may be of use in a criminal prosecution; and we cannot too strongly condemn it. Every officer making an unconstitutional search, and every officer advising or conniving at such conduct is a law violator and a violator of his oath of office and should be held to accountability.

Judgment affirmed.

MR. JUSTICE CAMPBELL not participating.