## No. 15,467.

### BILLS ET AL. *v.* THE PEOPLE.
(157 P. [2d] 139)

Decided February 26, 1945.

Mr. PHILIP HORNBEIN, Mr. THEODORE EPSTEIN, for plaintiffs in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

A. B. BILLS and James Sheridan, hereinafter called defendants, were convicted on eight counts in an eleven-count information, and, by judgment of the district court, were sentenced to serve terms in the county jail and the payment of certain fines. To review the judgment of the district court they sue out this writ of error.

The record is voluminous and discloses that defendants operated a "suit club" under the name of J. D. Ellison Co. A person became a member upon payment of of $1.50, and if he thereafter paid $1.50 for thirty-two consecutive weeks, he became entitled to a $49.50 suit, to be made to his measurement by defendants. Upon making the first payment of $1.50, a small book was furnished the member, in which was written his name and the date of his first payment, with blank spaces therein for thirty-two additional weekly payments. In the book were printed conditions, among which were:

"The amount paid on this contract applies towards the purchase of a garment for $49.50 or more." "The making of the second payment and the acceptance by J. D. Ellison Co., constitutes full acceptance of these conditions, and after such payment further deposits will not be returned." Upon making the initial payment, the book was delivered to the member and with it a numbered "advertising coupon." There appeared therein a statement that it was the desire of defendants to distribute their advertising money among the public, and also a statement that clearly indicated that J. D. Ellison Co. had been engaged in the tailoring business for a long period of time, although it was definitely established that the business operation of defendants was begun in Denver, Colorado, about March, 1943. This so-called "advertising coupon" entitled the member or holder to a free suit whenever the last three figures in the United States Treasury receipts corresponded with the number on the "advertising coupon." It contained a provision: "This coupon is distributed and accepted with the distinct understanding that it is neither a wagering contest nor a lottery, but is simply an advertising medium whereby we hope to increase our business and make you one of our customers. * * * It is distinctly understood that no cash consideration or compensation whatsoever either directly or indirectly is required to obtain this coupon. Offered free to the public."

The evidence clearly established that some of these "advertising coupons" were given to others than members, and for these no payment whatever was required. The persons receiving free "advertising coupons" were selected by defendants or their representatives, and there is no evidence that any were given to anyone on his unsolicited request.

There were 549 members of the "suit club" who had paid at the time of the cessation of business the sum of $5,432.00. From the middle of March, 1943, until June

5, 1943, seven suits were won under the "advertising coupon" plan, but none were won except by members who were making their weekly payments.

One of the members of the "suit club" reported its operation to the police department, and shortly thereafter several policemen entered the office of J. D. Ellison Co., and, without any search warrant or other legal process, took certain records and materials into their possession, and these were, without objection, marked, identified by witnesses, testimony concerning them received, and upon being offered in evidence, defendants objected upon the ground of the illegal search and seizure, which objection was overruled and the exhibits admitted in evidence.

One Franklin was advertising manager for defendants, and in his possession at the time of his arrest there was found a typewritten sales talk. This sales talk was copied from one in the office of defendants, and was used, in substance, by Franklin when he approached men for membership. Franklin's only financial interest in the "suit club" resulted from successful solicitation of members. When he succeeded in securing a member, he was entitled to the first week's payment and subsequent payments, totaling in all $10.00. Franklin, in approaching prospective members, stated that he represented J. D. Ellison Co., and explained briefly the "suit club" plan and then exhibited the "advertising coupons." He stated to some prospective members that he retained some of the "advertising coupons," and if they would join the "suit club" he would use those "advertising coupons" to see that they won a suit after a few weeks, upon condition that those who so won suits would help him in the sale of memberships among their friends and acquaintances. In every instance, however, where a membership was sold, the book and "advertising coupon" were, upon payment of $1.50, delivered to the member, and, according to the sales talk, the member was then cautioned thusly: "I want to impress

upon you to keep your book in good standing and see that he (the collector) receipts it every week otherwise my hands will be tied."

The counts upon which the defendants were convicted were: 4. Engaging in or otherwise promoting a lottery. 5. Engaging in or otherwise promoting a gift enterprise. 6. Knowingly advertising a lottery. 7. Knowingly advertising a gift enterprise. 8. Conspiracy to engage in or otherwise promote a lottery. 9. Conspiracy to engage in or otherwise promote a gift enterprise. 10. Conspiracy to knowingly advertise a lottery. 11. Conspiracy to knowingly advertise a gift enterprise.

The terms in the county jail, because of concurrent sentences, aggregated one year and six months, and the total fines assessed were in the sum of $3,000.00.

The assignments of error argued and presented are: 1. Only one conspiracy charged. 2. Denial of motion for directed verdict. 3. The introduction of evidence obtained from defendants' possession without legal authority. 4. Error in instructions.

1. Only One Conspiracy Charged. The Constitution of the State of Colorado provides: "2. Lotteries prohibited. The general assembly shall have no power to authorize *lotteries or gift enterprises* for any purpose, and shall pass laws to prohibit the sale of lottery or gift enterprise tickets in this state." (Italics ours) Sec. 2, Art. XVIII, Colorado Constitution.

Pursuant to the constitutional mandate, the legislature in 1881 enacted a statute, the title to which reads: "An Act Concerning Lotteries; Prohibiting the Advertisement and Sale of Lottery Tickets, and Prescribing Penalties Therefor." S. L. Colo. '81, p. 178.

This act has never been amended and is the only statute under which these convictions can be supported.

The violation of the section with which these defendants were charged reads: "It shall not be lawful hereafter for any person, persons * * * to engage in or otherwise promote any *lottery or gift enterprise* of any

nature, or for any purpose whatsoever. Every person who shall knowingly engage in or in any wise promote any *lottery or gift enterprise,* * * * who shall knowingly sell, give, or exchange or offer to sell, give or exchange any ticket, share, certificate, receipt, or other token in any *lottery or gift enterprise,* or who for himself * * * shall knowingly advertise any *lottery or gift enterprise,* in any manner whatsoever, shall be guilty of a misdemeanor, and, on conviction, fined in the sum of not less than one hundred dollars, and imprisoned in the county jail for a period of not less than thirty days." (Italics ours) '35 C.S.A., vol. 4, c. 104, §1.

It should be noted that the Constitution prohibits *lotteries* or *gift enterprises.* It should likewise be noted that the title to the act in question prohibits *lotteries* only and that the section of the statute under which these defendants were prosecuted uses the words *"lottery"* and *"gift enterprise"* as synonymic. Both the Constitution and statute used *lottery* and *gift enterprise* interchangeably, and if it is contended that by one act a person violated the statute against lotteries and by the same act violated the statute pertaining to gift enterprises, it is obvious that the section of the statute includes an offense not clearly within the title, and, consequently, violated the provisions of section 21, article V, Colorado Constitution. It is our conclusion that the fourth and fifth counts of the information state but one offense; the sixth and seventh counts state but one offense; the eighth and ninth counts state but one offense; the tenth and eleventh counts state but one offense. And the court erred in otherwise determining. The jail sentences pronounced in the fifth, seventh, ninth, and eleventh counts, and the fines assessed on these counts, are therefore, set aside, and inasmuch as the jail sentences on the eighth and tenth counts are within the statutory limits and all other sentences lawfully imposed are made to run concurrently with the sentences on the eighth and tenth counts, the total im-

prisonment of the defendants must not exceed one year and six months, and, inasmuch as the fines imposed on the ninth and eleventh counts are, under our determination, improper, these fines are set aside and the total fines assessable are, under our determination, $1,500.00.

2. Denial of Motion for Directed Verdict. The undisputed evidence disclosed that "advertising coupons" were delivered with the book at the time of the first payment and a warning given that the weekly payments must be regularly made or it would be impossible for the defendants to so arrange their "advertising coupons" that one might become an early winner of a free suit. We are not concerned with any practice of the defendants in those instances when "advertising coupons" were given to non-members for: "The gratuitous distribution of property by lot or chance, if not resorted to as a device to evade the law, and no consideration is derived directly or indirectly from the party receiving the chance, does not constitute the offense. In such case the party receiving the chance is not induced to hazard money with the hope of obtaining a larger value, or to part with his money at all; and the spirit of gambling is in no way cultivated or stimulated, which is the essential evil of lotteries, and which our statute is enacted to prevent." *Cross v. People,* 18 Colo. 321, 324, 32 Pac. 821.

We are concerned with those members of the "suit club" who purchased their book and "advertising coupon" by the payment of $1.50 and the agreement to thereafter, for a period of thirty-two weeks, make like payments.

The most casual reading of the record in this case will convince one that the most persuasive sales talk by defendants' advertising manager was based upon his promise that the member would shortly become possessed of a winning "advertising coupon" which would entitle him to a $49.50 suit for the payment of a

very small sum. It would overtax the credulity of the average man to believe that the inducement for joining the "suit club" was the member's desire to purchase a suit from an organization that had so recently commenced its business operations and to pay $49.50 for his suit without having made any further investigation of the truth of defendants' representations. "Suit clubs" are not unknown to tribunals, and, although in those adjudicated cases which have come to our attention there was no such device as the free "advertising coupon," nevertheless in all instances the "suit club" scheme, with drawings, has been held to be in violation of lottery statutes. In the instant case it is contended that this prosecution is precluded because if a member is unsuccessful in securing a suit through the "advertising coupon" scheme, he will be entitled, upon the thirty-third payment, to a suit costing $49.50. This does not in anywise affect the question here under consideration. *DeFlorin v. State*, 121 Ga. 593, 49 S. E. 699; *State v. Lipkin*, 169 N. C. 265, 84 S. E. 340; *People v. Hecht*, 119 Cal. App. 778, 3 P. (2d) 399.

■ A lottery or gift enterprise may be generally defined as a scheme in which a valuable consideration is paid directly or indirectly for a chance to draw a prize. "As embracing the essential elements of a lottery within the definition above given, so-called clubs wherein the members pay periodical dues and conduct periodical drawings for a specified article of merchandise are lotteries, even though the unsuccessful members are entitled to receive the article eventually, after the payment of a stipulated amount, or to withdraw and take out in trade the installments which they have paid, and although the winners are not determined by lot but are selected by the seller." 38 C. J., p. 299, §22.

The law as announced in *Cross v. People, supra*, as applied to the facts in that case, is certainly clear, and we have no desire to depart therefrom. The factual situation in the Cross case, supra, is essentially differ-

ent from that in the instant case. In the Cross case tickets were given indiscriminately, without reference to purchases or the payment of money, and this fact was publicized through newspaper and other advertising mediums. In the instant case "advertising coupons" were given to some who were solicited for membership in the "suit club," but who were not induced to join, but, in other instances, the statements and conduct of the defendants was such as to leave no reasonable doubt in the minds of a prospective member that his dollar and a half not only entitled him to a $49.50 suit at the end of thirty-three weeks, but entitled him to one of the "advertising coupons" whereby, in many instances, if promises were kept, he would acquire the suit for a much lesser sum. The "advertising coupon" contained language which could have been placed thereon but for one purpose, and that was to evade the provisions of the lottery statute. It was an adroit attempt to make legal that which would otherwise be criminal, and in this it was unsuccessful.

Counsel for defendants call our attention to many decisions wherein the question of "bank night" as a lottery has been determined. We do not believe these decisions are persuasive in determining the questions here involved because in practically every case which has been called to our attention there was a free and rather public distribution of chances and the payment of an admission fee to the theatre was not a prerequisite to obtaining a chance to win a prize. In some jurisdictions "bank nights" have been determined to be within the prohibitions of the lottery statute upon the theory that the prize given was paid for in part by those who purchased theatre tickets. *State ex rel. v. Fox Kansas Theatre Co.*, 144 Kan. 687, 62 P. (2d) 929; *Iris Amusement Corp. v. Kelly*, 366 Ill. 256, 8 N. E. (2d) 648; *Commonwealth v. Wall*, 295 Mass. 70, 3 N. E. (2d) 28.

We recognize that it is difficult to state a definition of the terms "lottery" and "gift enterprise." They are

generic. It is no sooner undertaken than some ingenious person evolves some scheme not quite within the letter of the definition given, for the purpose of evading the lottery statutes. We believe it, however, almost impossible for the most ingenious and subtle mind to devise any scheme or plan, short of a gratuitous distribution of his own property, which has not been held by one or more courts of this land to be in violation of the lottery statutes. It is our duty to inquire into the plan of the "suit club" as disclosed by the evidence and to determine, no matter how skillfully the same may be disguised, whether or not it involves the necessary elements to bring it within the definition of a lottery. This we have done, and we are convinced that there was sufficient evidence to require the court to submit the case to the jury for its determination.

3. The Introduction of Evidence Obtained from Defendants' Possession Without Legal Authority. At the trial certain books and records and other articles were marked for identification, the witness fully interrogated as to them, and upon being offered, an objection to their introduction in evidence was raised for the *first time,* the objection being based upon the ground that the exhibits were unlawfully obtained. We might dispose of this assignment by a reference to the decision in *Massantonio v. People,* 77 Colo. 392, 236 Pac. 1019, wherein the syllabus, supported by the opinion, reads: "Although papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue." In the Massantonio case the evidence illegally obtained was most damaging, and prior to and throughout the trial defendant took every available means to recover, suppress and strike it. Here, although all the exhibits are not before us, the record discloses that most, if not all, of them were favorable rather than harmful to de-

fendants. Under these circumstances, we adhere to the decision in the Massantonio case, supra.

We are aware of the fact that in many jurisdictions evidence unlawfully obtained is, upon motion of the one from whom it was so obtained, suppressed, but being fully aware of this fact and upon sound reason, the decision in the Massantonio case, supra, was announced by this court in 1925 and has remained the law in this jurisdiction.

Our attention has been directed to *United States v. Lefkowitz,* 285 U. S. 452, 52 Sup. Ct. 420, 76 L. Ed. 877, and we recognize some of the cases therein cited as decisions announced by the Supreme Court of the United States and the United States Court of Appeals prior to the time the Massantonio case was announced by this court, notwithstanding which this court determined not to follow the decisions of the federal courts.

Under the circumstances of the instant case, we have no desire to modify the decision in the Massantonio case and find it adverse to defendants' contention.

■ ■ 4. Error in Instructions. The term "lottery" and the term "gift enterprise" are interchangeable, both in the Constitution and statute. It follows that instructions based upon the assumption that the statute embraced two offenses were erroneous, but not prejudicial. The record considered, the instructions given were sufficient and not prejudicial to defendants, and no error was committed in refusing tendered instructions.

The cause is remanded with instructions to so modify the judgment that the sentences imposed and the fines assessed on counts five, seven, nine, and eleven be set aside, cancelled, annulled, and held for naught, and in all other respects the judgment of the trial court is affirmed.

MR. CHIEF JUSTICE BAKKE does not participate.

MR. JUSTICE KNOUS specially concurs.

Mr. Justice Hilliard concurs in part and dissents in part.

Mr. Justice Knous concurring specially.

As I view, the court opinion in extending the doctrine of the case of *Massantonio v. People,* 77 Colo. 392, 236 Pac. 1019, to justify the admissibility in evidence of the books, records and suits of clothes seized by the police in the unlawful search of the place of business of the defendants, improperly disregards the established law as announced in *United States v. Lefkowitz,* 285 U. S. 452, 52 Sup. Ct. 420, 76 L. Ed. 877. Distinction should be preserved between searches made for the seizure of contraband articles, the possession of which is per se illegal and criminal, as was the nature of the intoxicating liquor involved in the Massantonio case, and searches, general and exploratory in character, made solely to get evidence to convict one of a crime and wherein the items appropriated have no illegal status or aspect, as is the situation in the case at bar. Notwithstanding my belief that the court opinion errs in the application of the Massantonio decision, I do not dissent to the affirmance of the judgment because, in my conception, such of the illegally seized articles as were admitted in evidence did not have the effect or tendency of proving defendants' guilt but, if anything, corroborated the defenses unsuccessfully advanced by them.

Mr. Justice Hilliard concurring in part and dissenting in part.

I concur in that portion of the opinion which is to the effect that since the title to the act involved comprehends lotteries, but not gifts, only as to lotteries may there be prosecutions; but in so far as there is affirmance of the judgment, I am in disagreement. It is clear,

as my study of the record convinces, that no money, or value otherwise, was paid or given, or received, for the cards which defendants issued. On their face, the cards emphasized that they were for advertising purposes. The advertising method employed by defendants perhaps is unique, but in principle it does not differ from advertising generally. I think the case is controlled by *Cross v. People,* 18 Colo. 321, 32 Pac. 821, and that an order for reversal, with instructions to dismiss, should be entered.