## No. 15,666.

### WOLF ET AL. *v.* THE PEOPLE.
#### (187 P. [2d] 926)

Decided November 3, 1947. Rehearing denied December 8, 1947.

Mr. PHILIP HORNBEIN, Mr. DONALD M. SHERE, Mr. F. E. DICKERSON, Mr. WILLIAM F. DWYER, for plaintiffs in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, for the people.

MR. CHIEF JUSTICE BURKE delivered the opinion of the court.

PLAINTIFFS in error, hereinafter referred to by name, were convicted of conspiracy to commit abortion and each was sentenced to the penitentiary for a term of one year to eighteen months. To review that judgment they prosecute this writ. They were represented below and here by separate counsel. Wolf assigns seventeen errors and Montgomery sixteen, generally they are duplications and separate consideration is unnecessary. Some require

no examination and others are so interrelated it is useless to take them up separately. Those deserving of notice may properly be thus classified and considered: 1. The seizure and introduction in evidence of Exhibits A and C; 2. The overruling of motions for severance; 3. The giving and refusal of certain instructions. Even these are so related that the disposition of one will leave little to be said as to the others. All motions and objections necessary to save the points were presented and overruled.

Wolf was a regularly admitted and practicing physician and surgeon whose professional activity consisted principally in the treatment of diseases of women, obstetrics, and pelvic and abdominal surgery. Montgomery was a duly licensed chiropractor. The particular offense charged concerned an abortion on one Mildred Cairo. Representatives of the district attorney's office, having no information concerning that offense, but possessed of definite information concerning a similar one committed on another woman and the connection of Wolf and Montgomery therewith, went to the office of Wolf without a warrant and took him into custody and there they took possession of said Exhibits which were his day books of 1944 and 1943 up to the time of the arrest. They were records of patients who consulted him professionally. So far as Mildred Cairo was concerned they disclosed only her name, address and telephone number.

1. It is contended that the seizure and use of these exhibits constituted reversible error. First, because it violated the fourth paragraph of section 9, chapter 177, '35 C.S.A., which provides that the physician "shall not, without the consent of his patient, be examined as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient; * * *." There are two answers to this contention. First, the information contained in the exhibits was not "necessary to enable him to prescribe or act for the patient," and second, this act is solely for the pro-

tection of the patient, not the physician. *Hanlon v. Wood-house,* 113 Colo. 504, 508, 160 P. (2d) 998; 28 R.C.L., p. 542, §132. Mildred Cairo testified in this cause, was fully cognizant of all the proceedings and had every opportunity to object to any disclosures made concerning her. Since no intimation to the contrary came from her lips throughout the trial her consent must be assumed for the purpose of this case.

The second objection is that the seizure and introduction of exhibits A and C was in violation of section 7, article II of the Constitution which forbids unreasonable search and seizure and forbids any such search and seizure without a warrant, and section 18 of article II, id., which provides "that no person shall be compelled to testify against himself in a criminal case." This identical contention was before this court over twenty years ago and decided to the contrary. The opinion was by the court en banc, one Justice not participating, all the others concurring. *Massantonio v. People,* 77 Colo. 392, 236 Pac. 1019. Numerous cases on both sides of the controversy were there cited. That decision has never been disturbed through the years, but has been frequently followed and reaffirmed. *Roberts v. People,* 78 Colo. 555, 243 Pac. 544; *Bills v. People,* 113 Colo. 326, 157 P. (2d) 139. Among the decisions of sister states handed down since the disposition of the Massantonio case, and following it, might be mentioned: *State v. Dillon,* 34 N.M. 366, 281 Pac. 474; *State v. Frye,* 58 Ariz. 409, 120 P. (2d) 793; *People v. Onofrio,* 65 Cal. App. (2d) 584, 151 P. (2d) 158. The question would thus seem to be definitely and finally disposed of in this jurisdiction under the rule of stare decises. We are not unconscious of the fact that that rule is frequently ignored, with the general approval of the courts, for certain definite and often valid reasons. Among these are doubtful decisions handed down by closely divided courts and recent decisions establishing rules not yet firmly embedded in the jurisprudence of the jurisdiction. No

such reason can possibly exist here. The best reason, and the one perhaps most frequently invoked to justify a departure from the rule, is that the case under consideration by the court demonstrates that adherence thereto will either promote injustice or defeat justice. No such reason exists in the instant case for any present change in the rule. The result of any present revocation or modification would here defeat justice and promote injustice. The evidence overwhelmingly supports the conclusion of the jury that these men were guilty; that this was not the only instance of their guilt but that they had been generally engaged in such forbidden practice. Their scheme appears to have been, and so the jury doubtless concluded, that persons familiar with their operations would steer prospective victims to Montgomery, who required that they first consult Wolf and get his opinion as to pregnancy, etc., and arrange for him to attend them after the operation. They then returned to Montgomery who did the actual work and turned the patient back to Wolf. One or the other fixed the fee and they divided it.

If a case ever comes before us which demonstrates that the rule in the Massantonio case has worked injustice, or prevented justice, it will be time enough to consider alteration or modification of that rule. Certainly these parties are in no position to contend that the law of Colorado which has stood for twenty years and been affirmed and reaffirmed by this tribunal and the decisions of sister states, should now be overturned or so modified that they may escape the toils in which their own felonious conduct has involved them.

It seems superfluous to add that nothing here or heretofore said by us and nothing contained in any of the numerous decisions of other jurisdictions in support of the rule in the Massantonio case, justifies unlawful searches or seizures. In line with such jurisdictions we have condemned them in the strongest terms and pointed out the proper remedy.

■ 2. In view of the foregoing, and the further fact that the exhibits in question contain references to Montgomery and directly contradict the testimony of Wolf in relation to him, the motions for severance were properly overruled.

3. The court's refusal to give tendered instruction No. 2 is fully answered by the foregoing.

■ Tendered instruction No. 1 and Wolf's tendered instruction No. 4 are based upon the failure of the people to call a certain witness. Since he was not endorsed on the information they were not misled and since the record discloses that they had all the essential knowledge concerning him which the people had, these instructions were properly refused.

Other assignments relating to instructions are so devoid of merit as to obviate the necessity for comment.

The judgment is affirmed.

MR. JUSTICE HILLIARD dissents.