## No. 28193

## In Re Interrogatories of the Governor
## Regarding the Sweepstakes Races Act

(585 P.2d 595)

Decided October 10, 1978. Rehearing denied November 6, 1978.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Mary J. Mullarkey, First Assistant, Appellate Section, for Governor Richard D. Lamm.

Leland M. Coulter, William R. Sprague, for Colorado Parks and Recreation Society.

Susan K. Griffiths, for Colorado Municipal League.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Pursuant to Article VI, Section 3 of the Colorado Constitution, the Governor of the State of Colordo, Richard D. Lamm, submitted two interrogatories to this court. We determined that we should answer the interrogatories.

In 1975, the General Assembly of the State of colorado enacted House Bill 1080, which authorized the Racing Commission to conduct sweepstakes races. Sections 12-60-116, 12-60-117, 12-60-118, C.R.S. 1973 (1976 Supp.). Based upon the referendum powers set forth in Article V, Section 1 of the Colorado Constitution and Article 40, Title 1, C.R.S. 1973, the Sweepstakes Bill was submitted to a vote of the qualified electors of Colorado on November 2, 1976.[1] Section 12-60-118.5, C.R.S. 1973 (1976 Supp.). The electorate, by a majority vote, answered the question, "Shall the conduct of sweepstakes races be authorized?" in the

---

[1] We have not been called upon to address the right of the people to initiate legislation relating to a lottery. No constitutional amendment has been proposed to permit a lottery in Colorado.

affirmative.

■ The following interrogatories were submitted to us by the Governor:

"1. Does Art. XVIII, sec. 2 of the Colorado Constitution, which provides in part that the 'general assembly shall have no power to authorize lotteries for any purpose,' prohibit the Department of Regulatory Agencies from conducting a lottery pursuant to the Sweepstakes Races Act when H.B. 1080 was approved by the people as a referred law and H.B. 1080 later was repealed and recodified in a new title by H.B. 1596, as more fully described below?

"2. Does Game A, or Game B, or Game C, as set forth below, constitute a lottery in violation of Art. XVIII, sec. 2 of the Colorado Constitution?

"*GAME A:* Sweepstakes players purchase tickets within the enclosure of a racetrack where there is held a race meet licensed by the Colorado Racing Commission or in other locations outside said racetracks as are specified by the Department of Regulatory Agencies. Each ticket is so designed that the player may make his own choice of the animal which the player believes will win, place, or show in a particular horse or dog race. The winning players are determined by the outcome of the race and the accuracy of each player's selection as to the outcome of the race. The winning players share in a pool of money collected from the sale of tickets and are entitled to participate at a later time in a drawing for an additional prize from the pooled money.

"*GAME B:* Sweepstakes players purchase tickets within the enclosure of a racetrack where there is held a race meet licensed by the Colorado Racing Commission or in other locations outside said racetracks as are specified by the Department of Regulatory Agencies. Each ticket is so designed that the player makes his own choice of the three post positions (not the animals) which the player believes will win, place, and show in a particular weekly horse or dog race. The winning players are determined by the outcome of the race and the accuracy of each player's section as to the outcome of the race. The winning players of the weekly races are then entitled to participate at a later time in a special sweepstakes race for prizes from the accumulated pooled money. Each winner from a weekly race may purchase a ticket within the enclosure of a racetrack where there is held a race meet licensed by the Colorado Racing Commission. Each ticket is so designed that the player may make his own choice of the animal which the player believes will win, place, or show in a particular horse or dog race. There will be available information on the nature of the race itself and on the past performance of the dogs or horses entered in the race, along with appropriate information on the breeding and physical characteristics of the racing animals. The winning players share in the pool of money collected from the sale of tickets for the weekly races.

"*GAME C:* Sweepstakes players purchase tickets within the enclosure of a racetrack where there is held a race meet licensed by the Colorado Racing Commission or in other locations outside such racetracks as are specified by the Department of Regulatory Agencies. Each ticket contains a preprinted series of single digits. A mechanical device selects digits and assigns each digit to a post position (not an animal) in a horse or dog race. The finishing order of the horses or dogs in those post positions dictates the order of the digits, and that order would be the winning number in the sweepstakes. Each ticket holder would compare the reprinted number of his ticket with the winning number in the sweepstakes and would win a prize if the ticket number matched, in whole and perhaps in part, the winning number in the sweepstakes."

We answer both interrogatories in the affirmative and declare that the sweepstakes legislation is unconstitutional.

We address the issues raised by Interrogatory Number 2 before analyzing the constitutional issues contained in Interrogatory Number 1.

### Interrogatory Number 2

The descriptions of Games A, B, and C have caused us to conclude that all three of the games fall within the definition of a lottery. It was conceded during oral argument that Game C was a lottery. We agree. For that reason, we need not review Game C.

Game B is governed by an intitial screening device which controls the opportunity to participate in a "special sweepstakes race." That screening device selects the participants in the sweepstakes race by pure chance. Each player selects several numbers representing different post positions from within a prescribed range of numbers and pays for the privilege of making his selection. It is apparent that no skill is exercised by the player when he predicts the order in which animals starting from various post positions will finish. If the animals which bear those numbers finish in an order similar to that predicted by the player, he is then eligible to participate in a special sweepstakes race.

 Our cases have established that a lottery is present when consideration is paid for the opportunity to win a prize awarded by chance. *Cross v. People,* 18 Colo. 321, 324, 32 P. 821 (1893). Article XVIII, Section 2 is violated if chance is the controlling factor in the award. *Ginsberg v. Turf Club,* 126 Colo. 471, 478, 251 P.2d 926 (1952). In Game B, the opportunity to participate in the special sweepstakes race is itself a valuable prize, and chance alone governs entrance to that race. Since chance substantially governs the right to participate in the race, Game B is also a lottery.

Game A begins with a race in which players predict which animals will win, place, or show in a particular race. Winning players are entitled to participate in a later drawing for a money prize. The second phase of Game A is encompassed by the constitutional prohibition. No skill is

exercised by players who participate in the drawing. Instead, they pay a valuable consideration for the opportuinity to win a prize awarded solely by chance. *Cross v. People, supra.*

### Interrogatory Number 1

Since all three games authorized by the referendum are lotteries within the meaning of Article XVIII, Section 2, we must determine whether those lotteries may be authorized by referendum pursuant to Article V, Section 1. Our answer is that the Colorado Constitution prohibits the use of a referendum for that purpose.

■ Article XVIII, Section 2, by its terms, prohibits the General Assembly from authorizing lotteries. We think it clear that the framers of the Colorado Constitution intended that the legislative power of the state not be used to authorize lotteries, whether or not that exercise of legislative power is ratified directly by the people through a referendum. *Ginsberg v. Turf Club,* 126 Colo. 471, 251 P.2d 926 (1952).

■ Colorado history reflects that Article V, Section 1 was not made a part of the Colorado Constitution until 1910. The frames of our constitution prohibited lotteries in the broadest terms at the time Article XVIII, Section 2 was enacted. In so doing, they "were seeking to suppress and restrain the spirit of gambling which is cultivated and stimulated by schemes whereby one is induced to hazard his earnings with the hope of large winnings." *State ex rel. Steen v. Murray,* 144 Mont. 61, 394 P.2d 761, 763 (1964). When the framers adopted Article XVIII, Section 2, they extended its prohibitions to all existing legislative power. The constitutional draftsmen plainly intended that the power to conduct lotteries could be restored by constitutional amendment, but not by referendum.

■ The people, in the exercise of their referendum powers, are bound by the same rules in this respect as the General Assembly. *State ex rel. Steen v. Murray, supra; State ex rel. Woodahl v. District Court,* 162 Mont. 283, 511 P.2d 318 (1973); I *Sutherland Statutory Construction* § 4.09(4th Ed. 1973). As such, the power of referendum is limited by Article XVIII, Section 2.

*People v. Prevost,* 55 Colo. 199, 134 P. 129 (1913), must be distinguished from the issues which are before us in this case. In *People v. Prevost,* we interpreted Article XIX, Section 2 of the Colorado Constitution, which provides:

"[T]he general assembly shall have no power to propose amendments to more than six articles of the constitution at the same session."

The General Assembly that year had proposed six constitutional amendments. The plaintiff in *People v. Prevost, supra,* argued that an amendment initiated pursuant to Article V, Section 1, violated the prohibition of Article XIX, Section 2, since the initiated amendment was the seventh amendment proposed that session. We held in that case that the people's initiative powers were not subject to the constraints imposed upon the

General Assembly by Article XIX, Section 2. In the *Prevost* case, however, Article XIX, Section 2 was countermanded by the specific language of Article V, Section 1:

"[T]he people reserve to themselves the power to propose . . . amendments to the constitution and to enact or reject the same at the polls *independent of the general assembly.*" (Emphasis added.)

Thus, it was clear in *People v. Prevost, supra,* that when Article V, Section 1 was added to the constitution, the people exempted their power of initiative from the limitations imposed in Article XIX, Section 2. No exemption from the prohibitions of Article XVIII, Section 2 appears in this case.

■ Accordingly, since Games A, B, and C are lotteries, the sweepstakes legislation which was approved by referendum is void and of no effect.

MR. JUSTICE PRINGLE and MR. JUSTICE CARRIGAN dissenting in part and concurring in part.

MR. JUSTICE KELLEY concurring in the result.

MR. JUSTICE PRINGLE concurring in part and dissenting in part:

I respectfully dissent only from that portion of the majority opinion which holds Game A to be a lottery. In all other respects, I heartily concur with the majority opinion.

MR. JUSTICE CARRIGAN joins me in dissenting to that portion of the majority opinion holding that Game A is a lottery. He concurs in all other aspects of the opinion.