QUESTION PRESENTED AND CONCLUSION
Does the Colorado Constitution prohibit the General Assembly from enacting legislation to legalize gambling?
The Colorado Constitution prohibits the General Assembly from enacting legislation to authorize lotteries, but it does not prohibit the General Assembly from enacting legislation to authorize forms of gambling which are not lotteries. The prohibition against lotteries applies to slot machines and blackjack. It does not apply to poker; therefore, this game could be legalized.
ANALYSIS
Applicable provisions.
Article XVIII, section 2 was part of the original Colorado Constitution, adopted in 1876. At that time, it read as follows:
 Section 2. Lotteries prohibited. — The general assembly shall have no power to authorize lotteries or gift enterprises for any purpose, and shall pass laws to prohibit the sale of lottery or gift enterprise tickets in this state.
The lottery provision of the Constitution has since been amended to allow the General Assembly to authorize certain forms of lotteries. In Bills v. People, 113 Colo. 326,157 P.2d 139 (1945) the court indicated that the terms lottery and gift enterprise were "synonymic" and used interchangeably in the Constitution and statutes. The phrase "gift enterprise" was deleted in 1959. 1959 Colo. Sess. Laws p. 867.[1]
The Article XVIII prohibition against legislatively authorized lotteries was the basis of an unsuccessful challenge to parimutuel wagering on dog and horse races. This type of wagering was legalized when, in 1948, the voters approved "An Act Authorizing, Regulating and Providing for Licensing the Racing of Horses and Other Animals with Parimutuel Wagering" that the General Assembly had submitted as a referendum. The Supreme Court rejected the constitutional challenge in Ginsberg v.Centennial Turf Club, 126 Colo. 471, 251 P.2d 926 (1952). Later, however, in 1978, the conduct of Sweepstakes races at the same facilities was found to be prohibited by Article XVIII, Section 2. In re Interrogatories of the GovernorRegarding the Sweepstakes Races Act, 196 Colo. 353,585 P.2d 595 (1978).
Section 2 of Article XVIII, as amended in 1980, now provides that
 [t]he general assembly shall have no power to authorize lotteries for any purpose, except that the conducting of such games of chance as provided [therein] shall be lawful on and after January 1, 1959, and the conducting of state supervised lotteries . . . shall be lawful on and after January 1, 1981.
It also provides that the authority to conduct particular lottery games be limited to certain non-profit licensees and the games be
 [r]estricted to the selling of rights . . . in the specific kind of game of chance commonly known as bingo or lotto, in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random and in the specific game of chance commonly known as raffles, conducted by the drawing of prizes or by the allotment of prizes by chance.
Id.
Article XVIII was again amended in November of 1990, when the voters granted the three mountain communities of Central City, Blackhawk and Cripple Creek the authority to permit "limited gaming." Section 9 of Article XVIII, provides interalia:
 (1) Any provision of section 2 of this Article XVIII or any other provision of this constitution to the contrary notwithstanding, limited gaming in the City of Central, the City of Blackhawk and the City of Cripple Creek shall be lawful as of Oct. 1, 1991.
 (4) (b) "Limited gaming" means the use of slot machines and the card games of blackjack and poker, each game having a maximum single bet of five dollars.
Meaning of "lottery".
For purposes of your request, the critical term in Section 2 is "lottery." Because state-authorized lotteries were a very common means for states to raise money in the nineteenth century, and because abuses apparently became common also, most states banned lotteries in the last decades of that century. By 1885, twenty nine states had banned lotteries. Greater LorettaImprovement Assoc. v. State, 234 So.2d 658 (Fla. 1970);State v. Brotherhood of Friends, 274 P.2d 787, 794-95
(Wash. 1952).
Consequently, what constitutes a lottery has historically been the subject of much litigation. And, because in that litigation courts have approached the question from different directions, the determinations as to what does and does not qualify as "lottery" vary significantly. Generally, however, there is agreement that while all lottery is gambling all gambling is not lottery, Ginsberg v. Centennial TurfClub, supra, and that principle is most germane to this inquiry.
In Colorado, the Supreme Court has provided the following description of "lottery":[2]
 [A] lottery is present when consideration is paid for the opportunity to win a prize awarded by chance.
In re Interrogatories of Governor Regarding SweepstakesRaces Act, 196 Colo. at 357, 585 P.2d at 598. According to this formulation, a particular gambling scheme is a "lottery" whenever three essential elements are present: consideration, prize, and chance. The type of scheme involved is immaterial.
The "chance dominant" test.
Not surprisingly, most litigation concerning lotteries has involved the third element: chance.[3] In determining whether this element is present within the meaning of constitutional and statutory provisions relating to lotteries, courts have adopted two distinct approaches.
Certain jurisdictions have embraced the "pure chance" doctrine. Under this approach, for a scheme to be a lottery, it must be one solely based on chance. The exercise of any skill by a participant in the scheme removes the scheme from within the definition of a lottery. See Braddock v.Family Finance Corp., 95 Idaho 256, 506 P.2d 824
(1973).
The majority of courts, however, have adopted the "dominant factor" doctrine under which a scheme is a lottery when chance dominates the distribution of prizes, even though the distribution maybe affected to some extent by the exercise of skill or judgment. E.g., Roberts v.Communications Inv. Club, 431 A.2d 1206, 1211 (RI 1981). Colorado has adopted this approach: "Article XVIII, Section 2 is violated if chance is the controlling factor in the award." In re Interrogatories of Governor,supra, 196 Colo. at 356, 585 P.2d at 598.
In an analysis of the "dominant factor" doctrine the supreme court of Alaska, in Morrow v. State, 511 P.2d 127
(Alaska 1973), set forth a four-part test to determine whether skill dominates over chance: 1) whether without skill it would be impossible to win the game; 2) whether the general public, not experts, have the capacity to solve the problems presented; 3) skill must control the final result, not just one part of the larger scheme — where skill does not destroy the dominant effect of chance, the scheme is a lottery and 4) the participants must be informed of the criteria used in selecting winners.
Consequently, the determination of which gambling game is exempt from the lottery prohibition must be made by applying the "dominant factor" test to the specifics of each game to see whether chance or skill dominates.
Specific games analyzed.
For purposes of this opinion, the games which constitute "limited gaming" within the meaning of the Colorado Constitution, Article XVIII, section 9(4)(b) have been analyzed. These games are slot machines, blackjack, and poker. Colorado courts have never been asked to determine whether any of these games constitutes a lottery. However, under the "chance dominant" test, it appears that slot machines are lotteries because chance clearly dominates; blackjack is probably a lottery because chance plays a large part but some skill is necessary; and poker is probably not a lottery because skill plays a larger, perhaps dominant role.
Slot machines.
Games played through slot machines have generally been perceived to be games where chance dominates and therefore have been categorized as lotteries. E.g., State exrel. Evans v. Brotherhood of Friends, 41 Wn.2d 133,297 P.2d 787 (1952).[4]
Blackjack.
The game of blackjack (or twenty-one) [5]
presents a situation where both skill and chance are present. In a formal Attorney General's Opinion issued on August 4, 1983, this office concluded that, because chance appears to dominate, blackjack is a "lottery." Very few courts have addressed this particular question, but those that have have been in accord with this conclusion. See State v. Eisen, 16 N.C. App. 532,192 S.E.2d 613, 616 (1972) ("In . . . blackjack . . . we think the element of chance clearly dominates the element of skill; certainly the element of chance is present in such a manner as to thwart the exercise of skill or judgment").
Poker.
The game of poker [6] is more problematic. The Supreme Courts of Montana and Oregon have decided that poker is a game of skill "with one player pitting his skills and talents against those of other players." Gallatin County v. D RMusic Vending, 208 Mont. 138, 141, 676 P.2d 779, 781 (1984);State v. Coats, 158 Or. 122, 74 P.2d 1102, 1106 (1938). But the Supreme Court of Ohio has held that it is a game of chance. Mills Jennings of Ohio, Inc. v.Department of Liquor Control, 70 Ohio St.2d 95,435 N.E.2d 407, 409 (1982).
The tension inherent in those decisions is reflected in some of our own supreme court's pronouncements on the subjects of lotteries and poker. In Bills v. People,supra, 113 Colo. at 332, 157 P.2d at 142, the court found that the essential evil of lotteries is the cultivation and stimulation of the spirit of gambling. Later, in In reInterrogatories of Governor, supra,196 Colo. at 357, 585 P.2d at 598, the court explained the intent of the framers of the Colorado Constitution to rid this state of that evil:
 The framers of our constitution prohibited lotteries in the broadest terms at the time Article XVIII Section 2 was enacted. In so doing, they were seeking to suppress and restrain the spirit of gambling which is cultivated and stimulated by schemes whereby one is induced to hazard his earnings with the hope of large winnings.
These statements suggest that our constitutional prohibition against lotteries must be broadly interpreted — perhaps broadly enough to include poker.
However, our supreme court has also stated:
 There is no prohibition in our Constitution which prevents the legislature, or the people from authorizing certain forms of gambling. It unquestionably is true that all lotteries and gift enterprises are forms of gambling, but it does not follow that all gambling is a "lottery" or "gift enterprise" as these terms are defined in law. No one would contend that a game of poker, in which money is bet upon the relative value of the cards held by the participants constitutes a lottery, but it most certainly is a form of gambling.
Ginsberg v. Centennial Turf Club, supra,126 Colo. at 477, 251 P.2d at 929 (emphasis added). Although it is dicta in Ginsberg, the characterization that poker is not a lottery has recently been cited by the court inCharnes v. Central City Opera House, 773 P.2d 546,551 (Colo. 1989).
While the call is a close one, I conclude that poker, as narrowly defined in § 12-47.1-103(22), is a game in which skill, not chance, dominates, and that legislative authorization of certain forms of poker would not be prohibited by Article XVIII Section 2.[7] That is not to say that on a case-by-case basis some forms of poker could be construed as more akin to games of chance, or a "lottery." Of course the fact that poker is not constitutionally prohibited in all cases does not mean that it is legal; the prohibitions of Article 10 of Title 18 still apply. See generally People v.Wheatridge Poker Club, 194 Colo. 15, 569 P.2d 324 (1977). Poker remains illegal unless and until the Legislature acts to change the criminal statutes.
 GALE A. NORTON Attorney General
 JOHN J. KRAUSE Assistant Attorney General
CONSTITUTIONAL AMENDMENTS CONTEST GAMBLING
Colo. Const. Art. XVIII, § 2
Colo. Const. Art. XVIII, § 9
LEGISLATIVE BRANCH House of Representatives
Colorado's constitutional law on lotteries does not prohibit the legislature from authorizing certain forms of gambling.
[1] In addition to this early constitutional restriction on lotteries, Colorado has historically criminalized most forms of gambling. See, e.g., § 18-10-101 to 108, C.R.S.
[2] Ginsberg, supra at 478 cites this definition from Cross v. People, 18 Colo. 321,32 P. 821, 822 (1893) in which the court determined the applicability of a statute prohibiting the promoting, advertising, and carrying on of a lottery or gift enterprise:
 It may be accepted as a result of the adjudicated cases that a valuable consideration must be paid, directly or indirectly, for a chance to draw a prize by lot to bring the transaction within the class of lotteries or gift enterprises that the law prohibits as criminal.
[3] Consideration and prize are relatively easy to determine. The payment of money to participate clearly constitutes "consideration." See In re Interrogatories ofGovernor, supra (where the court necessarily held the element of consideration to exist upon the purchase of tickets by sweepstakes bettors). See also Crossv. People, 18 Colo. 321, 32 P. 821 (1893); State v.Bissing, 178 Kan. 111, 283 P.2d 418 (1955). And the "prize" may be anything of value. In re Interrogatories ofGovernor, supra (money prize); Cross v.People, supra (piano); Bills v. People,supra (men's suit); Society Theater v. City ofSeattle, 118 Wn. 258, 203 P. 21 (1922) (groceries).
[4] However, under the current definition, it is possible that some type of slot machines might escape the "chance dominant" category:
 "Slot machine" means any mechanical, electrical, video, electronic, or other device, contrivance, or machine which, after insertion of a coin, token, or similar object, or upon payment of any required consideration whatsoever by a player, is available to be played or operated, and which, whether by reason of the skill of the player or application of the element of chance, or both, may deliver or entitle the player operating the machine to receive cash premiums, merchandise, tokens, redeemable game credits, or any other thing of value other than unredeemable free games, whether the payoff is made automatically from the machines or in any other manner.
Colo. Const. art. XVIII, section (9)(4)(c); § 12-47.1-103(26) (emphasis added).
[5] Section 12-47.1-103(4) defines blackjack:
 (4) "Blackjack" means a banking card game commonly known as "21" or "blackjack" played by a maximum of seven players in which each player bets against the dealer. The object is to draw cards whose value will equal or approach twenty-one without exceeding that amount and win amounts bet, payable by the dealer, if the player holds cards more valuable than the dealer's cards.
[6] Section 12-47.1-103(22) defines poker:
 (22) "Poker" means a card game played by players who are dealt cards by a nonplayer dealer. The object of the game is for each player to bet the superiority of such player's hand and win the other players' bets by either making a bet no other player is willing to match or proving to hold the most valuable cards after all the betting is over. Poker includes but is not limited to draw, stud, low ball, or any combination thereof.
[7] There is considerable difference in the chance-skill equation when applied to "video poker" machines. Seegenerally Rychlak, Video GamblingDevices, 37 UCLA L. Rev. 555 (1990). My conclusion here specifically excludes "video poker."