**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Louie HEI, Defendant.**

**No. 3459.**

United States District Court,
D. Idaho, S. D.

Dec. 23, 1954.

Sherman F. Furey, Jr., U. S. Atty. for Idaho, Boise, Idaho, for plaintiff.

William H. Langroise and Frank F. Church, of Langroise, Clark & Sullivan, Boise, Idaho, for defendant.

TAYLOR, District Judge.

This matter is presently before the Court on defendant's motion to suppress evidence allegedly obtained from him by a Narcotics Agent of the United States

Government through an illegal search and seizure. A hearing on said motion has been held, both parties have presented evidence, and oral argument of counsel has been heard. The attorneys for the United States and for Hei have supplied the Court with memoranda of authorities and briefs.

Plaintiff contends that the search, inasmuch as it was made pursuant to a valid arrest, was legal, and, therefore, that the evidence obtained thereby should not be suppressed.

The question is whether a federal Narcotics Agent, who, without a search warrant or warrant for arrest, enters one's premises under color of authority purportedly for the purpose of discussing reports that the resident is violating the federal narcotics law, but, who, once on the premises, takes hold of and examines said resident's arms for indications that he has been violating said law, and a minute or so thereafter observes narcotics in open sight on a table within said premises, makes a valid arrest for the crime of concealing narcotic drugs, said crime having been committed in his presence. Cf. 21 U.S.C.A. § 174.

For the purpose of ruling on this motion, the Court need for the most part only consider the testimony of plaintiff's witness, Agent Jack Merrill, agent in charge of the Bureau of Narcotics' regional office in Portland, Oregon. By stipulation of counsel his testimony was corroborated by the Deputy Sheriff of Elmore County, Idaho, and the Chief of Police of Mountain Home, Idaho.

Testimony at the hearing disclosed that at approximately 10:30 A.M. on September 16, 1954, Agent Merrill, accompanied by said Chief of Police and Deputy Sheriff, went to defendant's dwelling, a room in the Alturas Hotel which is located in Mountain Home, Idaho. Prior to that time, according to Merrill, he, in his capacity as a Narcotics Agent, had received reports from reliable sources that the defendant was again using opium, was attempting to addict certain waitresses and a boy to its use, and possibly was selling said narcotic in the vicinity of Mountain Home. On the morning in question, Agent Merrill and the other two officers went to Hei's hotel room without a warrant either for his arrest or to search the premises, and it is the Agent's testimony that, at that time, no such warrants had been issued. One of the officers knocked on the door of said room, and the defendant called from inside inquiring who it was. The Chief of Police answered by calling back his first name, and Hei apparently recognized him by said first name and his voice. There was a brief pause, then Hei opened the door. At about that time Agent Merrill showed defendant his credentials, and told him that they wished to "talk to him about this information we had that he was using drugs again and also selling drugs." Hei then denied that he was using or selling drugs, and Merrill said, "Let me look at your arms." He then held and inspected Hei's arms "to determine that way if there were any fresh hypodermic marks, intravenous scars." There were none at the time. Agent Merrill then went over a few feet and sat down on the edge of defendant's bed. From that point on, Agent Merrill testifies that the events occurred as follows. "Immediately in front of me was this dressing table and on the table was lying a pocket knife with the blade exposed with a gob of opium on the blade and I picked that up and I said, 'Louie, if you are not using opium or using drugs now, what are you doing with this opium?' I said, 'That is enough to arrest you with illegal possession right there,' and he started to get up and I said, 'Just sit down,' and I showed him the knife. He said, 'Well, I cough a lot and I use a little."

The government does not contend, nor does this Court consider, that defendant consented to the search of his premises or that he waived his civil rights under the Fourth Amendment to the Constitution of the United States. Rather, it is plaintiff's position that Agent Merrill was lawfully upon the premises, observed a crime being committed in his presence, thereupon made a valid arrest, and pursuant thereto legally and reasonably pro-

ceeded to search the hotel room and to seize the narcotics thereby discovered. In the main, the Government relies upon United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, to support its argument.

In search of controlling authority to resolve the issue thus presented, we have entered upon independent, additional research because defendant's citations do not deal squarely with the issue of this case, and the extensive briefing of the U.S. Attorney's office has not revealed decisive precedent supporting the validity of this arrest. We have come upon Johnson v. U. S., 1947, 333 U.S. 10, 68 S.Ct. 367, 369, 92 L.Ed. 436, a Supreme Court decision which dealt with a situation analogous to this matter.

In the Johnson case, a detective had received a tip from an informer, who was himself a known addict, that an unknown person was using opium in a certain hotel room. When the detective, accompanied by federal Narcotics Agents, arrived on the scene, the smell of burning opium, distinguishable to the Agents as such, was emanating from a particular room in the hotel. The detective knocked on the door, and someone from within inquired, "Who's there?" The detective answered by giving his name; there was a brief delay and a shuffling sound within the room; then defendant Johnson opened the door. The detective at that point told the defendant, "I want to talk to you a little bit." and the defendant stepped back, without comment, admitting the officers. The detective then said, "I want to talk to you about this opium smell in the room here." The defendant denied that there was such a smell, and the officer then told her, "I want you to consider yourself under arrest because we are going to search this room." In the course of such search, incriminating evidence, opium, was found, and the District Court refused, on defendant's motion, to suppress it. The government there defended the search as incident to a valid arrest. The Supreme Court of the United States, Justice Jackson delivering the opinion, held that the Dis-

trict Court erred in declining to suppress. The following language of the opinion is pertinent here.

"Entry to defendant's living quarters, which was the beginning of the search, was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right. Cf. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654."

Regarding the validity of the arrest, the Court noted that the government,

" * * * quite properly stakes the right to arrest, not on the informer's tip and the smell the officers recognized before entry, but on the knowledge that she was alone in the room, gained only after, and wholly by reason of, their entry of her home. It was therefore their observations inside of her quarters, after they had obtained admission under color of their police authority, on which they made the arrest.

"Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers, and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law."

To resolve the issue before this Court, then, we must consider two questions. Is the Johnson decision in point with the facts here, and, if so, is the Johnson holding still the law?

 Here, as in Johnson, the validity of the arrest is essential to the Government's argument that the evi-

dence in question should not be suppressed. It is also true under Idaho law that an arrest without a warrant, is valid only if "for a crime committed in the presence of the arresting officer or for a felony of which he had reasonable cause to believe defendant guilty." Johnson v. U. S., supra, 333 U.S. 15, 68 S.Ct. 370; Section 19–603, Idaho Code. It is well settled that in cases of this type state law determines the validity of arrests without warrant. United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210.

It must be conceded that the officers had no grounds upon which to arrest the defendant without a warrant until they observed the narcotic drug in open sight collected on the blade of a knife which was resting atop a night table, i. e., until they recognized that the crime was being committed in their presence.

That the officers entered defendant's quarters under color of their official authority must also be conceded. The testimony of the officer and of the defendant makes it quite clear that defendant knew the Chief of Police and recognized him, not only by sight, but by his voice and first name called through his closed door. When the door was opened, Agent Merrill showed his credentials, and the official nature of the officers' visit was apparent from their statement that they wished to talk to him about reports that he had been using opium again.

Having gained admission to defendant's quarters, Agent Merrill admittedly held and examined defendant's arms in search of marks or scars which might indicate that he had been using opium recently. This was inconsistent with the purpose given for gaining that admission; viz., to discuss the above-mentioned reports. It was only after he had made this examination that Agent Merrill observed the narcotics and made the arrest.

It is an unavoidable conclusion, then, that in this case, as in the Johnson case, "It was therefore their observations inside of her (his) quarters, after they had obtained admission under color of their police authority, on which they made the arrest." Johnson v. U. S., supra, 333 U. S. 16, 68 S.Ct. 370.

■ Plaintiff urges with abundant conviction that the Johnson case is no longer the law. Therefore, we shall review the history of the Johnson decision subsequent to its delivery by the Supreme Court. In the first place, and notwithstanding language in the dissenting opinion to the contrary, United States v. Rabinowitz, supra, did not overrule Johnson. In Rabinowitz, the question was, without a search warrant, how extensive a search may be made following a valid arrest if, practically, a warrant might have been obtained. In extending the scope of permissible search under such circumstances, the court no more than extended the long-established doctrine of the common law that, pursuant to a lawful arrest, even without a warrant the person of the arrested party may be searched. But the question here is the validity of the arrest, and in Rabinowitz this matter was not in issue; in fact, the arrest there was pursuant to a warrant.

Buttressing this reading of Rabinowitz is the fact that subsequent to the date of that decision the Courts of the United States have on numerous occasions cited Johnson in search and seizure cases. Cf., United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; Lee v. U. S., 1952, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270, and Gatewood v. U. S., 1953, 93 U.S.App.D.C. 226, 209 F.2d 789.

■ Although the narcotics laws require and deserve rigid, indeed zealous, enforcement, this Court must conclude that defendant's rights under the Fourth Amendment to the Constitution of the United States, and in particular, under the Fourth Amendment as construed by the Johnson case, have been violated, and that his motion to suppress must be granted. Therefore, on consideration of the evidence, briefs, oral argument, and memoranda taken, and in accordance with the foregoing, defendant's motion to suppress should be, and the same hereby is, granted.