## No. 20,713.

Simon Alex Hernandez *v.* The People of the
State of Colorado.
(385 P. [2d] 996)

Decided October 21, 1963.

Messrs. CADDES and CAPRA, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN P. MOORE, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

WE will refer to the plaintiff in error Hernandez as

the defendant or by name, and to the defendant in error as the People. In a trial to the court Hernandez was convicted of receiving stolen property, namely, one DeJur-Grundig Stenorette dictating machine, and he is here by writ of error. The dictating machine in question was introduced in evidence after the trial court had denied defendant's timely motion to suppress it. The impropriety of this ruling is the defendant's principal assignment of error before this Court.

The Attorney General has confessed error on this issue and joins the defendant in urging reversal. He agrees that the dictating machine was procured as a result of an unreasonable search and seizure and that the trial court committed prejudicial error in permitting its admission in evidence.

Ordinarily, we summarily grant the request of the Attorney General for reversal where he confesses judicial error. See *Soto v. People,* 64 Colo. 528, 173 Pac. 399, and *McCray v. People,* 150 Colo. 178, 371 P. (2d) 422. The fundamental importance of the matters raised here to the constitutional administration of justice in criminal cases in this state leads us, however, to a more detailed discussion of the reasons for our reversal than is usual in cases where error is confessed.

Until June 19, 1961, the rule in Colorado was that evidence, even though obtained as a result of an unlawful search and seizure, was admissible in a prosecution for a criminal offense. *Massantonio v. People,* 77 Colo. 392, 236 Pac. 1019; *Wolf v. People,* 117 Colo. 279, 187 P. (2d) 926 (Aff'd. 338 U.S. 25, 93 L. Ed. 1782, 69 S. Ct. 1359). However, on that date, the Supreme Court of the United States decided *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. (2d) 1081, 81 S. Ct. 1684, which overruled *Wolf,* supra, and for the first time extended to state courts the rule that evidence illegally obtained was inadmissible in a criminal prosecution — a rule in effect in the federal courts since 1914. *Weeks v. United States,* 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341.

In our view, *Mapp,* supra, does not by its terms nationalize the law of search and seizure, see Traynor, J., *Mapp v. Ohio At Large in the Fifty States,* 1962 Duke L.J. 319; Collings, *Toward Workable Rules of Search and Seizure — An Amicus Curiae Brief,* 50 Calif. L.Rev. 421; Weinstein, *Local Responsibility for Improvement of Search and Seizure Practices,* 34 Rocky Mtn. L. Rev. 150, but it does compel state courts to examine and resolve the problems arising from the search for and the seizure of evidence in the light of state and federal constitutional guarantees against unlawful searches and seizures. As a result of *Mapp,* supra, and to implement the constitutional guarantees against unlawful searches and seizures, this Court, on November 1, 1961, issued Rule 41, Colo. R.C.P., providing for the manner in which search warrants should be issued and making property obtained by an unlawful search and seizure inadmissible in evidence in the courts of this state provided timely motions to suppress are made. Rules establishing workable *state* procedures governing searches and seizures, even though they may not be strictly in accord with federal procedures, are proper provided that such rules do not violate the Fourth Amendment proscription against unreasonable searches and seizures. *Ker v. California,* 374 U.S. 23, 10 L. Ed. (2d) 726, 83 S. Ct. 1623.

With the foregoing in mind, we proceed to examine the conduct of the officers in this case in seizing the dictating machine in order to determine whether the manner in which they obtained possession of the machine was incident to a lawful search and in doing so we outline certain principles which must stand as necessary appendages to our Rule 41, Colo. R. Crim. P.

A warrant for the arrest of the defendant on the charge of assault to murder was purportedly issued out of a Justice of the Peace Court in Denver, Colorado, on November 17, 1961. The warrant was not produced at the trial and does not appear of record, but Police Sergeant Borden of the Denver Police Department testified

that he served such a warrant on the defendant when he arrested him.

Three search warrants were issued on February 1, 1962, by Judge William H. Burnett, a Justice of the Peace for the City and County of Denver, two of which commanded that the person of the defendant be searched. The third commanded that certain premises be searched which were originally described in the typewritten portion of the warrant as "Apartment #12, 3357 Navajo, Navajo Apartments." The number "2" had a line drawn through it with ink and the initials "D. B." placed next to it. At the hearing on the motion to suppress the evidence, Officer Borden testified that he had altered the warrant in the manner indicated but that he did not recall when he had done so. The property to be seized under the warrants was described as bulk marijuana, marijuana cigarettes, and a 32 caliber automatic pistol.

The affidavits in support of the search warrants were on a mimeographed form on which blank spaces were provided for describing the person or premises to be searched and the property to be seized. The affidavits were identical except for the typewritten description of the person or premises to be searched, and one example will suffice for the purposes of illustration:

*"Sergeant Duane L. Borden,* being duly sworn, upon his oath says: that he has reason to believe that (on the person) known as *Alex Gamboa, alias: Simon Alex Hernandez DPD 27811* there is now located certain property, to wit, *bulk marijuana, marijuana cigarettes, and other implements for the processing and handling of marijuana and a 32 cal. automatic pistol which is carried by the above person while he engages in the traffic of marijuana* which property *is designed or intended for use or which is or has been used as a means of committing a criminal offense, or the possession of which is illegal.*

Dated: *1 February 1962*          */s/ Duane L. Borden*
                                                      Affiant

"Sworn and subscribed to before me this *1* day of *February,* 1962.

/s/ *Wm. S. Burnett*
Justice of the Peace"

On the evening of February 8, 1962, four police officers had the defendant's apartment at 3357 Navajo Street in Denver under surveillance. The police observed the defendant and one Sammy Herrera drive up in an automobile and park it at the corner of 34th Avenue and Navajo Street. The defendant and Herrera got out of the car and entered Apartment No. 1 of the above described address. Officer Borden went up to the door and knocked on it. The defendant opened the door slightly and Borden said "Arrest warrant—police, arrest warrant." The defendant slammed the door shut and Borden proceeded to break it down, thereby gaining entrance to the apartment. Hernandez was then presented with copies of the warrants and placed under arrest.

The officers then began a systematic search of the apartment. During the search of the apartment one Officer Hayes took from the defendant the keys to the automobile in which the defendant had arrived and searched it. In the locked trunk thereof he found the dictating machine in issue here. In addition to the dictating machine, the return on the search warrant listed a Colt 38 Caliber pistol, a Samsonite briefcase containing two boxes of cartridges and miscellaneous papers, a case of silverware, a gray shirt containing a marijuana cigarette in the left pocket and a switchblade knife.

■■ The Fourth Amendment to the United States Constitution requires probable cause supported by oath or affirmation as a condition precedent to the valid issuance of a search warrant. The Colorado Constitution, Article II, Sec. 7, is even more restrictive and provides that probable cause must be supported by oath or affirmation *reduced to writing.* The determination of whether probable cause exists is a judicial function to be performed by the issuing magistrate, which in Colorado

may be any Judge of the Supreme, District, County, Superior or Justice of the Peace Court under Rule 41, Colo. R. Crim. P., and is not a matter to be left to the discretion of a police officer. Before the issuing magistrate can properly perform his official function he must be apprised of the underlying facts and circumstances which show that there is probable cause to believe that proper grounds for the issuance of the warrant exist. Mere affirmance of the belief or suspicion on the officer's part is not enough. To hold otherwise would attach controlling significance to the officer's belief rather than to the magistrate's judicial determination. *Dumbra v. United States*, 268 U.S. 435, 69 L. Ed. 1032, 45 S. Ct. 546; *Nathanson v. United States*, 290 U.S. 41, 78 L. Ed. 159, 54 S. Ct. 11; *State v. Macri*, 39 N.J. 250, 188 A (2d) 389; 4 *Wharton's Criminal Law and Procedure*, §§ 1543 and 1545 and cases collected therein. Therefore, the affidavits in question here containing only the conclusion of Officer Borden that he believed that certain property was on the premises or person and that such property was designed or intended or was or had been used as a means of committing a criminal offense or the possession of which was illegal, without setting forth facts and circumstances from which the judicial officer could determine whether probable cause existed were fatally defective. The warrants issued thereon were nullities. Any search conducted under them was unlawful. The fruits of such a search are, by *Mapp*, supra, and by our Rule 41, Colo. R. Crim. P., inadmissible in evidence.

We are then faced with the problem of whether the dictating machine was admissible as the fruit of a search incident to an arrest, assuming *arguendo* that the arrest of Hernandez was valid. It is certainly true that a *reasonable* search may be made in the place where a lawful arrest occurs in order to find and seize articles connected with the crime as its fruits, or as the means by which it was committed. *Agnello v. United States*, 269 U.S. 20, 70 L. Ed. 145, 46 S. Ct. 4.

What is a "reasonable" search incident to arrest has been the subject of much case law and many law review articles. See, e.g., *Marron v. United States,* 275 U.S. 192, 72 L.Ed. 231, 48 S. Ct. 74; *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 75 L.Ed. 374, 51 S. Ct. 153; *United States v. Lefkowitz,* 285 U.S. 452, 76 L. Ed. 877, 52 S. Ct. 420; *Harris v. United States,* 331 U.S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098, *United States v. Rabinowitz,* 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430; Way, *Increasing Scope of Search Incidental to Arrest,* 1959 Wash. U.L.Q. 261; Weinstein, *Local Responsibility for Improvement of Search and Seizure Practices,* supra; Barrett, *Personal Rights, Property Rights and the Fourth Amendment,* 1960 Supreme Court Review 46; Comment, *The Law of Search and Seizure,* 7 Vill. L. Rev. 407; Fraenkel, *Concerning Searches and Seizures,* 34 Harv. L. Rev. 361.

The decisions have not been altogether harmonious, but throughout all the cases and all the learned treatises on the subject runs the dominant theme that the search, whether under a valid search warrant or whether as incident to a lawful arrest, must be one in which the officers are looking for specific articles and must be conducted in a manner reasonably calculated to uncover such articles. Any search more extensive than this constitutes a general exploratory search and is squarely within the interdiction of the constitutional guarantee against unreasonable search and seizure. The flagrant and abusive invasions of the sanctity of the home and the privacy of the individual by warrants which allowed general exploratory searches were well known to the framers of the Federal Constitution, and it was against such practices that James Otis made his famous remarks in opposition to General Writs of Assistance in the year 1761. See *Quincy's Mass. Rep.,* 1761-1772, Appendix I, p. 469. It was against just such exploratory searches that the Fourth Amendment was specifically directed. On the other hand, it appears from the authorities that if an officer is conducting a search,

either under a valid search warrant or incident to a valid arrest where the search is such as is reasonably designed to uncover the articles for which he is looking and in the course of such search discovers contraband or articles the possession of which is a crime, other than those for which he was originally searching, he is not required to shut his eyes and refrain from seizing that material under the penalty that if he does seize it it cannot be admitted in evidence. See *Harris v. United States,* supra, and *United States v. Rabinowitz,* supra.

Under the standards which we have outlined above, we conclude that the search here, if conducted as incidental to the arrest on a charge of assault to murder, was a general exploratory search and as such forbidden by both the Federal and Colorado Constitutions. There is not one word in the record before us to indicate that the officers were searching for a particular instrumentality with which the offense of assault to murder was committed. Any of the fruits of this search, if incidental to the arrest, were clearly inadmissible.

Since the search warrants issued in this case were nullities and since the search as conducted, if incidental to an arrest, was a general exploratory search and as such was unlawful, the motion to suppress should have been granted.

One remaining feature of the case deserves attention, namely, the alteration of the search warrant by Officer Borden. Since, as we have heretofore said, only a judicial officer may issue the search warrant, it is axiomatic that the right to alter, modify, or correct the warrant is necessarily vested only in that authority. It follows that the alteration in the instant case was a usurpation of the judicial function and, therefore, improper. See I Varon, *Searches, Seizures and Immunities,* page 354.

We are convinced that the principles we have laid down today are such as to preserve to the individual the constitutional guarantees against the unlawful invasion of his privacy without unduly hampering law enforce-

ment authorities in their conscientious desires to protect the welfare of the public.

The Federal Bureau of Investigation has been operating under rules very similar or more restrictive than those we have laid down today and it has not been suggested either that the Federal Bureau of Investigation has thereby been rendered ineffective or that the administration of criminal justice in the federal courts has thereby been disrupted.

We recognize, as was said by Mr. Justice Tom Clark, once the chief prosecuting attorney of the United States, that nothing can destroy a government more quickly than its failure to observe its own laws or, worse, its disregard of the charter of its own existence. Unlawful short cuts to conviction tend to destroy the entire system of constitutional restraint on which the liberties of the people rest. *Mapp v. Ohio,* supra.

The judgment is reversed and the cause remanded for such further proceedings as are consistent with the views herein expressed.