Homer **BROWN**, #34946, and Oswald Glymph, #34945, Petitioners,

v.

Wayne K. **PATTERSON**, Warden, Colorado State Penitentiary, Respondent.

Civ. A. No. 67-C-282.

United States District Court
D. Colorado.

Nov. 9, 1967.

**630**

Leslie A. Gross, Denver, Colo., for petitioners.

Duke W. Dunbar, Atty. Gen., for the State of Colorado, James F. Pamp, Asst. Atty. Gen., Denver, Colo., for respondent.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, Judge.

Petitioners herein seek habeas corpus relief pursuant to 28 U.S.C. § 2254. They have been allowed to proceed without prepayment of costs; a hearing has been held; briefs have been filed and the matter now stands submitted. Petitioners were tried together on narcotics charges before a jury in the Denver District Court. The jury convicted Glymph of possession of narcotics and Brown of possession of narcotics and conspiracy to possess narcotics. On April 17, 1963, both were sentenced to the Colorado State Penitentiary for a period of not less than nine nor more than ten years. Petitioners argue that their convictions were obtained through the use of unlawfully-seized evidence, and that their confinement therefore violates the Fourteenth Amendment.

The essential facts are not in dispute. On April 26, 1962, Detective Kennedy of the Denver Police Force obtained a warrant to search Homer and Margaretta Brown's room at the Rossonian Hotel. The judge who issued the warrant did so on the basis of a written affidavit, sworn to by Kennedy, which stated in conclusory terms that he had reason to believe that the hotel room contained narcotics and narcotic implements. It failed to give the factual basis for this belief or any facts from which the judge could independently infer probable cause.[1] It is conceded by the State that this affidavit and the warrant it supported were fatally defective.

At 1:30 in the morning on April 30, 1962, Officers Metros, Alexander, Crook and Mullins of the Denver Police Force

---

[1]. In relevant part, the affidavit for the search warrant read as follows:

"Detective C/J/Kennedy, being duly sworn, upon his oath says: that he has reason to believe that (on the premises) & (on the person) known as Margurite [sic] Brown—residing at the ROSSONIAN HOTEL, 2642 Welton Street—Room # 315—Denver Colorado, there is now located certain property, to wit, NARCOTICS—Opium and/or opium derivatives—synthetic narcotics—Narcotic Implements (hypodermic needles & syringes)—MARIHUANA (Cannabis Sativa L.) which property is designed or intended for use or which is or has been used as a means of committing a criminal offense or the possession of which is illegal."

took the warrant to the Rossonian Hotel for the purpose of searching the Browns' hotel room. The manager of the hotel went up to the room with them, knocked on the door, and identified herself when the occupants asked who was there. The door was opened by Margaretta Brown and the officers observed that Homer Brown and Oswald Glymph were also in the room.[2] After Mrs. Brown loudly but briefly protested the intrusion, Officer Metros stepped inside and served her with the search warrant. As the other officers entered the room they observed Oswald Glymph thrusting a handkerchief toward his mouth. Officers Mullins and Alexander grabbed Glymph's arm and after a brief struggle a capsule fell from the handkerchief onto the floor. This capsule was retrieved by the officers and chemical tests later revealed that it contained heroin. The officers then searched the hotel room and an adjoining closet, and discovered eleven capsules of heroin, a hypodermic needle, a balloon, a container of canned heat, and two burn-stained bottle caps, all of which are commonly used by narcotic addicts. After this evidence was seized, the occupants of the room were formally arrested and taken to the Police Station to be booked and questioned.[3]

An information was filed on May 3, 1962, charging the occupants of the room with various narcotics violations. Several months later, the executed search warrant was filed with the Clerk for the Denver District Court, but it was not actually placed in the Brown-Glymph file until the day before trial on April 2, 1963. The return and supporting affidavit were misfiled in Municipal Court and could not be located when the trial commenced. During the course of the trial, the Petitioners' attorney moved to suppress the evidence seized from the hotel room on the grounds (1) that no affidavit was attached to the search warrant as required by Colo.R.Cr.P. 41, and (2) that the warrant was "invalid on its face" for a number of technical reasons. A short recess was taken while the District Attorney attempted to locate the missing affidavit. When the affidavit was finally produced, Petitioners' attorney abandoned his objection as to the affidavit, and continued to object only on the ground that the search warrant was invalid on its face. There was a failure to attack the insufficiency of the affidavit. The court overruled the general objections, and refused to suppress the evidence acquired by the search.

After the Petitioners had been convicted, their attorney moved for a judgment of acquittal or a new trial under Colo.R.Cr.P. 29, again without mentioning the defective affidavit. When this motion was denied, Petitioners appealed to the Colorado Supreme Court by writ of error. It was on this appeal that the Petitioners raised for the first time the insufficiency of the affidavit upon which the search warrant was issued. Without reaching the merits of this argument, the Colorado Supreme Court denied the appeal because contemporaneous objection had not been directed to the sufficiency of the affidavit during trial and proper grounds had not been asserted upon motion for a new trial. Brown and Glymph v. People, 158 Colo. 561, 408 P.2d 981 (1965). Petitioners then applied to this Court for a writ of habeas corpus. This application was denied on April 28, 1966, because Petitioners had not exhausted their post-conviction remedies under Colo.R.Cr.P. 35 (b). The Petitioners then returned to the trial court and moved to vacate their sentences under Rule 35(b). This mo-

---

2. A fourth occupant of the room received a directed verdict of acquittal in state court. It is not clear from the record before us whether Margaretta Brown was convicted or acquitted; in any event, she is not a party to the petition before the Court.

3. No problem of police interrogation is involved, since the Petitioners were tried and sentenced before the Supreme Court's decisions in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tion was denied and the Petitioners again appealed to the Colorado Supreme Court. In Brown and Glymph v. People, Colo., 426 P.2d 764 (1967), the Supreme Court again held that the Petitioners "had effectively waived their right to object to this evidence by not objecting at the time of its introduction." 426 P.2d at 765. Subsequent to this ruling, Brown and Glymph filed the present petition for a writ of habeas corpus in this Court.

We conclude that the Petitioners have now exhausted their state remedies as required by 28 U.S.C. § 2254.

The State has frankly conceded that the affidavit in question is wholly insufficient under both the Colorado and United States Constitutions. This concession is in accordance with Hernandez v. People, 153 Colo. 316, 385 P.2d 996 (1963), (decided it is true after the search in question) where the Attorney General of Colorado confessed error on affidavits identical to the one in this case and joined the defendant in urging reversal of his conviction.[4] In complying with this request, the Colorado Supreme Court stated the requirement of an evidentiary affidavit as follows:

> "The determination of whether probable cause exists is a judicial function to be performed by the issuing magistrate, * * * and is not a matter to be left to the discretion of a police officer. Before the issuing magistrate can properly perform his official function he must be apprised of the underlying facts and circumstances which show that there is probable cause to believe that proper grounds for issuance of the warrant exist." 385 P.2d at 999.

This is not a new or legalistic requirement. It is deeply rooted in events prior to the Revolutionary War when writs of assistance were routinely issued by the courts to revenue officers, giving them discretionary power to search suspected places for smuggled goods. The early patriot, James Otis, denounced such writs as "the worst instrument of arbitrary power, the most destructive of English liberty and the fundamental principles of law, that ever was found in an English law book," since they placed "the liberty of every man in the hands of every petty officer." II Works of John Adams 523, 524. It was the hatred and fear of such arbitrary government intrusions that moved the state and federal governments to provide in their constitutions that "no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation,"[5] and likewise moved both state and federal courts to almost unanimously interpret this language as requiring warrants to be supported by evidentiary affidavits containing sufficient facts to allow "probable cause" to be determined by a detached magistrate instead of the accusing police officer. See the cases collected in I Cooley, Constitutional Limitations 610–17 (1927) and Cornelius, Search and Seizure 246–74 (1926). To dispense with this requirement would render the search warrant itself meaningless. It would allow a police officer to subjectively determine probable cause.

The search warrant in question was routinely issued at the request of the accusing officer, without the slightest showing of probable cause, and therefore was clearly within this fundamental principle that the basis for the issuance of a search warrant must be determined by the judicial officer based on facts and not on the conclusion of the applicant. See, e. g., Ex Parte Burford, 3 Cranch 448, 2 L.Ed. 495 (1806); Grumon v. Raymond, 1 Conn. 40, 6 Am.Dec. 200 (1814); Commonwealth v. Lottery Tickets, 5 Cush. (Mass.) 369 (1850). Thus, as the State concedes, it is clear that this search warrant was issued in violation

---

4. In *Hernandez* proper objection to the illegally-seized evidence was made at trial, and therefore no question of waiver was present.

5. This is the language of the Fourth Amendment to the United States Con- stitution. All state constitutions contain the same essential requirements. Cooley, Constitutional Limitations 615 (1927). See Colo. Const. art. I, § 7.

of long-established fundamental constitutional standards, and that any evidence seized under its authority should have been excluded from evidence in the trial court unless there was other legal basis for its admission. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); and Hernandez v. People, 153 Colo. 316, 385 P.2d 996 (1963). *Aguilar* and *Hernandez* articulate this principle but the concept is such an inextricable part of a lawful search based on a warrant that it can be considered an essential corollary of Mapp v. Ohio and to follow axiomatically from *Mapp*.

While it was conceded in all post-trial proceedings that the affidavit and the warrant are constitutionally insufficient, the Colorado courts held that the Petitioners had "waived" their constitutional rights by failing to make proper objection to the unlawfully-seized evidence during their trial.

 Petitioners do not assert that this so-called "contemporaneous objection" rule was used by the Colorado courts to discriminate against or evade the assertion of their federal constitutional rights. The rule has been even-handedly applied in Colorado and undoubtedly served a valid purpose in maximizing correct decisions and concomitantly minimizing errors requiring mistrials and retrials. Cf. Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958). However, under Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), it is clear that even nondiscriminatory procedural defaults which forfeit constitutional rights in state courts do not necessarily bar habeas corpus relief in the federal courts.

As we read the decisions of the Supreme Court of the United States we are not at liberty to apply this "contemporaneous objection" rule which was here held to preclude Petitioners from obtaining relief. In Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed. 2d 408, the Supreme Court approved the Mississippi "contemporaneous objection" rule saying:

"The Mississippi rule requiring contemporaneous objection to the introduction of illegal evidence clearly does serve a legitimate state interest. By immediately apprising the trial judge of the objection, counsel gives the court the opportunity to conduct the trial without using the tainted evidence. If the objection is well taken the fruits of the illegal search may be excluded from jury consideration, and a reversal and new trial avoided." 85 S.Ct. at 567.

At the same time the Supreme Court recognized that such a procedural default on the part of the accused does not preclude raising the question of habeas corpus in a federal court. On this the Supreme Court said:

"* * * petitioner might still pursue vindication of his federal claim in a federal habeas corpus proceeding in which the procedural default will not alone preclude consideration of his claim, at least unless it is shown that petitioner deliberately bypassed the orderly procedure of the state courts. Fay v. Noia, supra, 372 U.S. at 438, 83 S.Ct. at 848." 85 S.Ct. at 570.

Thus, it would appear that there is somewhat of a double standard applicable to state and federal courts. The state court can find a waiver arising from the failure of the accused to object. When, however, a federal court examines the question in habeas corpus proceedings it is subject to the Fay v. Noia requirement that the petitioner shall have deliberately bypassed the orderly procedure of the state courts. In that case it was clearly decided that habeas corpus relief can be denied on procedural grounds only if the petitioner

"after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the

deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—" Fay v. Noia, supra, 372 U.S. at 439, 83 S.Ct. at 849.

See also Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1958). Compare Henry v. State· of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). There has been nothing that resembles even faintly an intentional and knowing waiver in this case. The Petitioners consistently resisted admission of the evidence in question and it was inadvertence that brought them into conflict with the contemporaneous objection requirement and forfeited their state remedies. Under Fay v. Noia, such a fictional waiver of rights cannot bar habeas corpus relief. One further observation: we believe in any event that there was substantial compliance with the contemporary objection rule in the trial court. There was continuous general objection to the search and to the warrant. In these circumstances we fail to see that the Petitioners should have been held to a specific and pin point objection at the risk of waiver or forfeiture. They should not be penalized because of their lawyer's inadvertent failure to object with pin point specificity.

■ One further issue remains. The State argues that even without a search warrant, the officers were entitled to search the hotel room incidental to a valid arrest. The reasoning is that after the officers had entered the room and before any search was undertaken, they observed Oswald Glymph in the act of committing a crime—i. e., that of possessing narcotics. As of that moment, the State asserts, the officers placed all of the occupants of the room under valid arrest [6] and were then entitled to conduct

an incidental search of the premises. Heavy reliance is placed on Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 92 L.Ed. 653 (1950), both of which unquestionably sanction searches incident to valid arrests. However, *Harris* and *Rabinowitz* are distinguishable from the present case, where the record reveals no probable cause for an arrest until after the officers had unlawfully entered petitioner Brown's living quarters.

The Supreme Court, in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), has held that the *Harris-Rabinowitz* doctrine cannot apply to such circumstances. In *Johnson*, federal narcotics agents smelled the strong odor of burning opium in a hotel corridor. The odor led them to Room 1, where they knocked on the door. When the occupant asked who was there, the officers identified themselves, and shortly thereafter a woman opened the door. The officers immediately placed her under arrest and searched the room, where they seized incriminating opium and smoking apparatus. Before the Supreme Court, the Government conceded that the officers could not have made an arrest until they had entered the room and found the woman to be the sole occupant. It argued, however, that once the officers had observed this fact, the arrest was lawfully made and the search lawfully conducted incident to that arrest. The Court noted that there was adequate time in which to obtain a search warrant and that the officers did not have probable cause to make a valid arrest until they had gained access to the hotel room; it then rejected the Government's argument with these words:

"Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. An of-

---

**6.** A formal arrest was not made until after the search was completed, but the State argues that a de facto arrest was made as soon as officers wrested the

heroin capsule from Glymph, since none of the occupants were free to leave the room after that time. We will assume this *arguendo*.

ficer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." 333 U.S. at 16–17, 68 S.Ct. at 370–71.[7]

On the basis of the record before us it would appear that the reasoning of Johnson v. United States is applicable here. The Attorney General has sought to justify the search on the ground of valid arrest in this court for the first time. Thus, we do not have any facts from which it could be determined that there was probable cause for the arrest and incidental search in accordance with the Ker v. California decision, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Therefore, we could not justifiably uphold this contention on the present record. We do not rule out the possibility that such a showing can be made upon a retrial of the case. See Giordenello v. United States, 357 U.S. 480, 488, 78 S.Ct. 1245, 1251, 2 L.Ed.2d 1503 (1958).

We have no choice except to determine the case on the record which has been made. On that record we must hold that the search was invalid having been conducted on a void warrant, and further that judged by federal habeas corpus standards, the Petitioners did not waive their constitutional rights. Moreover the facts adduced fail to show that there existed probable cause for arrest and search incident to arrest. Thus the evidence seized was inadmissible under the exclusionary rule of Mapp v. Ohio, supra.

It is therefore adjudged that the order to show cause heretofore issued be made

absolute; that the judgments of conviction be vacated and set aside and it is ordered that the Petitioners be released from custody unless the State determines within thirty days to retry the Petitioners. A stay of execution of this order of thirty days is granted to the State (Respondent) for the thirty day period.

---

7. For analogous cases reaching the same result, see McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Whitley v. United States, 99

U.S.App.D.C. 159, 237 F.2d 787 (1956); United States v. Hei, 126 F.Supp. 755 (D.Idaho 1954).