The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Mack Harris THOMPSON, Defendant–Appellant.

No. 89CA1454.

Colorado Court of Appeals, Div. III.

Sept. 12, 1991.

Rehearing Denied Oct. 24, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John J. Krause, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Jess M. Perez, Deputy State Public Defender, Ft. Collins, Samuel Santistevan, Deputy State Public Defender, Denver, for defendant-appellant.

**1162**

Opinion by Judge CRISWELL.

Defendant, Mack Harris Thompson, appeals the judgment of conviction of possession of a controlled substance and tampering with evidence, arguing that the trial court erred in refusing to suppress certain evidence. We conclude that one of the search warrants relied upon by the court in refusing to suppress the evidence was improperly issued, and therefore, we reverse and remand for a new trial.

As a result of information provided by a police informant, Fort Collins detectives arranged a drug buy. During the course of the subsequent events, defendant was found in the front seat of a car that matched the description of the vehicle in which the principal participant in the drug sale and his companion were travelling. As officers approached this vehicle, defendant put something in his mouth. The arresting officer was unable to observe the nature of the item, and although ordered to spit the item out, defendant refused to do so, and instead, he swallowed it. He was searched, but no drugs were found in his possession. He was then taken to a hospital for observation because it was suspected that it was a narcotic substance that he had swallowed.

Within hours thereafter, police requested the court to issue a search warrant, pursuant to Crim.P. 41, requiring defendant to submit to an x-ray examination of his gastrointestinal area to determine if he had, in fact, swallowed any drugs, as they suspected. Pursuant to this request, such a warrant was issued that same day.

The following day, after this x-ray procedure had been completed, the police requested the entry of a further order to require defendant to take a laxative to expedite a bowel movement. Pursuant to, and on the same day as, this second request, the court issued a warrant allowing law enforcement agents "to search the stomach of ... [defendant] by means of a laxative...." After the laxative was administered, a number of balloons containing cocaine were discovered in defendant's excrement, and evidence of this discovery was admitted during defendant's later trial.

I.

The procedure for the issuance of a search warrant is prescribed by Crim.P. 41. Pursuant to that rule, such a warrant may be issued to seize any property the possession of which is illegal. Crim.P. 41(b)(4). The warrant may be issued, however, only if the request for its issuance is supported by an affidavit stating facts that establish "probable cause" to believe that the property to be searched for "is located ... in the ... person ... to be searched." Crim.P. ·41(c).

If the warrant is issued, it must identify the "person" to be searched and the property to be searched for. Crim.P. 41(d)(1). In addition, the warrant may contain such other orders as may be required "to comply with the provisions of a statute, charter, or ordinance ... or otherwise to accomplish the purposes of the warrant." Crim.P. 41(d)(2).

■ This rule of procedure and its predecessor were promulgated to implement the federal and state guarantees against unlawful searches and seizures. *Hernandez v. People*, 153 Colo. 316, 385 P.2d 996 (1963). It necessarily follows, therefore, that Crim.P. 41 must be interpreted in a manner consistent with those constitutional guarantees. *See People v. Leahy*, 173 Colo. 339, 484 P.2d 778 (1970) (statute requiring court to issue warrant if described showing is made held invalid as being inconsistent with judicial responsibility under Fourth Amendment).

■ The reference in Crim.P. 41 to a "search" of a "person" clearly applies to a search of a person's body surfaces, and we conclude that it also applies to a "search" of the internal portions of a person's body. However, if a request is made for the issuance of a warrant to engage in these more intrusive internal body searches, such as those involved here, the Fourth Amendment requires that the court consider a number of criteria not delineated in Crim.P. 41. *See Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *People v. Milhollin*, 751 P.2d 43 (Colo.

1988); *People v. Williams,* 192 Colo. 249, 557 P.2d 399 (1976).

■ First, while Crim.P. 41 requires that the request demonstrate only "probable cause" that the item will be discovered in the search, a request for an intrusive search must reveal a "clear indication" that the sought after evidence will be found. *People v. Milhollin, supra; People v. Williams, supra.*

In addition, the court must consider whether the requested procedure will present a risk to the suspect's life or health. *Winston v. Lee,* 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). And, it must weigh the "individual's dignitary interests in personal privacy and bodily integrity" against the "community's interest in fairly and accurately determining guilt or innocence" in light of the other means of proof of guilt that may be available. *Winston v. Lee, supra.*

Finally, the court must be satisfied that the intrusion will be performed in a reasonable manner. Thus, if a search is to employ a "medical technique, even of the most rudimentary sort," an intolerable risk, rendering the proposed search unreasonable, might be introduced if such technique were to be employed by other than qualified medical practitioners. *Schmerber v. California, supra.*

Crim.P. 41 does not, by its own terms, require the court to consider any of these additional factors. Nevertheless, because the Fourth Amendment requires their consideration, any request under Crim.P. 41 for a warrant to engage in such an intrusive search, as well as the court's consideration of such a request, must address these concerns.

## II.

### A.

The affidavit presented in the support of the issuance of the warrant requiring defendant's body to be x-rayed contained a detailed recitation of the circumstances that led to defendant's arrest. These circumstances, it was alleged, established probable cause to believe that x-rays would reveal the existence of drug-filled balloons in defendant's body.

The allegations of this affidavit were that a reliable confidential informant had been contacted by a man who offered to sell drugs to the informant. This individual was accompanied by another man, and they were both in a black motor vehicle with Oklahoma license plates. The informant told police that he had arranged to meet with the individual offering to sell the drugs.

The informant and a detective met with this individual who delivered a package to them. After his arrest, this individual told police that defendant had accompanied him in the black car with Oklahoma license plates.

Near the place where this individual was arrested, police saw defendant, who generally matched the description of the second man, in the car as described. As police approached this vehicle, they saw defendant place something in his mouth and quickly swallow it.

In the warrant issued by the court, there is a specific finding that there was "good cause" to believe that an x-ray would reveal "where the controlled substance is located and how it might be packaged." However, neither in this warrant nor in any ancillary order did the court find that the circumstances described in the affidavit disclosed a "clear indication" that x-rays would reveal the existence of a controlled substance. Likewise, the court did not explicitly address any of the other factors that must be considered in determining whether an intrusive body search may be conducted.

■ In assessing the sufficiency of the showing made in support of the issuance of a warrant, a court must restrict itself to the four corners of the supporting affidavit and analyze its contents in a nontechnical and common sense fashion. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *People v. Paquin,* 811 P.2d 394 (Colo.1991).

Employing this standard, we cannot say that, given the circumstances portrayed, the warrant authorizing an x-ray search was improperly issued. In seeking to suppress the evidence disclosed by this x-ray search, defendant did not contest the validity of his arrest and, indeed, asked the court to assume that there was probable cause for that arrest. This assumption, together with the facts set forth in the affidavit, gave a "clear indication" that defendant had swallowed a foreign object which, most likely, was a controlled substance.

Moreover, while we recognize that the use of an x-ray can, under some circumstances, present a safety risk, if properly used, it does not involve physical contact, as such, and is only minimally more intrusive than a typical body search. *See United States v. Vega–Barvo*, 729 F.2d 1341 (11th Cir.1984). *Cf. United States v. Shreve*, 697 F.2d 873 (9th Cir.1983).

Further, in considering whether this minimally intrusive procedure presented a risk to defendant's life or safety, the danger to defendant presented by the rupture of any container holding drugs, if he had, in fact, swallowed such an item, cannot be overlooked. This possibility would support the conclusion that immediate action to determine what it was that he had swallowed was warranted. And, the use of the minimally intrusive x-ray procedure constituted a reasonable means to accomplish this purpose.

Accordingly, while the trial court erred in not considering all of the criteria required to be considered when a request for such a search is made, we conclude that the undisputed facts supported the court's actions in issuing the first warrant.

### B.

In contrast, we conclude that the court erred in issuing the second warrant, which authorized the administration of a "laxative" to defendant.

The affidavit supporting the request for the second warrant repeated the allegations contained in the first affidavit. In addition, it noted that the x-ray procedures had revealed that there was an "article of jewelry stuck in [defendant's] rectum that may prohibit him from defecating." Significantly, however, this affidavit made no assertion that the x-rays had confirmed the presence of containers of illegal drugs in defendant's digestive system. From the face of this affidavit, therefore, one would infer that the only foreign object disclosed by the x-rays was this item of jewelry.

Further, this affidavit contained no detailed information concerning the effect which the article of jewelry might have. It said only that a physician had advised that it "may" prohibit defendant from defecating, and as a consequence, this physician "could not give any certain time" that defendant might have a bowel movement. The administrative of a laxative was sought to "expedite [sic] the procedure [i.e., the natural process of defecation]...."

Finally, the request for a warrant described the drug to be administered only generically as a "laxative." It did not note the nature of the drug to be administered; it did not describe any possible side effects that might result from the administration of the drug; and it did not state whether there had been any investigation made as to defendant's physical condition or medical history so as to determine whether the administration of certain "laxatives" to him might cause a physical risk not normally presented.

In issuing this second warrant, the court, again, found that there was "probable cause" to believe that the "search" might result in the discovery of illegal drugs; again, it made no finding that the second affidavit gave a "clear indication" that drugs were present in defendant's body.

Further, the court made no findings respecting the risk, if any, to defendant's health or safety that the administration of certain drugs might present, and its warrant did not limit, in any way, the nature of the drug to be administered, so long as the drug might be classified as a "laxative." In addition, the warrant did not require the drug to be administered by qualified medical personnel. Likewise, the court made no

findings respecting the need to invade defendant's "dignitary interests in personal privacy and bodily integrity" in order merely to "expedite" the eventual passage of any foreign object that might be in defendant's body.

We conclude that the affidavit supporting the request for the second warrant failed to provide a sufficient foundation for the issuance of that warrant. In addition, we also conclude that the court erred in failing to address the criteria required to be considered in issuing a warrant authorizing an intrusive internal body search.

This affidavit must be considered in light of the fact that defendant had recently been x-rayed for the express purpose of determining whether he had ingested balloons containing drugs. The affidavit, however, made no reference to any x-ray results. Yet, if the x-ray procedures had demonstrated the presence of drugs in defendant's digestive tract, such evidence would almost surely have been relied upon by the police in requesting leave to administer a laxative to him.

The circumstances of defendant's arrest, considered alone and *before* any x-rays were taken, gave a "clear indication" of the presence of drugs in defendant's body. However, the inferences to be drawn from those circumstances were significantly weakened by the *later* x-rays' apparent failure to disclose the presence of drugs. Indeed, in light of the apparent negative x-ray results, any "indication," based upon the circumstances disclosed by the second affidavit, was that no drugs were present.

Based solely upon the contents of the affidavit, therefore, we must conclude that the court issuing the warrant erred, as a matter of law, in finding that this affidavit furnished "probable cause" to believe that there were drugs in defendant's body (even if that lesser standard were the appropriate standard to apply).

In addition, even if we were to consider the second affidavit sufficient to establish either probable cause to believe that there were drugs in defendant's body, or a clear indication thereof, we would still conclude that the court improperly issued the warrant. This is so because that court failed to consider the intrusive nature of the search requested in light of the community's need to obtain any evidence that such search might reveal.

The affidavit in support of the request for the second warrant makes it clear that the administration of a laxative to defendant was not necessary in order to obtain or to preserve the suspected evidence. While this affidavit asserted that the existence of the "article of jewelry" inhibited defendant's bowel movement, it made it clear that the natural digestive processes would eventually yield any evidence of illegal drugs that defendant's body might possess. Indeed, the affidavit is explicit in noting that the administration of a laxative would do no more than expedite this process; the eventual passage of any foreign objects in defendant's digestive tract appears to have been inevitable.

Under these circumstances, defendant was constitutionally entitled to a court ruling whether a less intrusive means of securing the evidence was available. Under similar circumstances, at least one court has concluded that the administration of enemas and laxatives constituted an unreasonable intrusion. *See United States v. Cameron*, 538 F.2d 254 (9th Cir.1976) (intrusive use of enemas and laxatives unwarranted because "[i]n time, the contraband in the rectal cavity might have been eliminated naturally").

Here, however, the record provides neither an explicit finding by the trial court that the need to obtain evidence demanded this intrusive procedure nor any other indication that the court issuing the warrant even considered this question. Given this lack, we must conclude that the court failed to weigh the two important interests at stake before issuing the warrant.

We hold, therefore, that the court issued the second warrant without the studied consideration of this issue that the Fourth and Fourteenth Amendments demand. Further, it cannot be said that the affidavit in support of the issuance of the second warrant established, as a matter of law,

that such a procedure was required. Hence, to the extent that the trial court later relied upon this warrant in refusing to suppress the evidence seized in accordance with its terms, it erred. And, because the issue has not been presented to us, we do not pass upon whether there exist any other bases for the admission of such evidence.

The judgment is reversed, and the cause is remanded to the trial court for a new trial.

TURSI and PLANK, JJ., concur.